IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GUAM CONTRACTORS ASSOCIATION, *et al.*, ) ) ) | CIVIL CASE NO. 16-00075 |
| Plaintiffs-Petitioners, ) ) | |
| vs. ) ) | **REPORT & RECOMMENDATION** |
| JEFFERSON B. SESSIONS, III,[1] Attorney General of the United States, *et al.*, ) ) ) ) | to Deny Motion for Preliminary Injunction |
| Defendants-Respondents. ) ) | |

This matter is before the court on the Plaintiffs' Motion for Preliminary Injunction, *see* ECF No. 8, which was referred to the below-signed Magistrate Judge. *See* Order re Referral, ECF No. 14. Therein, the Plaintiffs asked that the Defendants, their officers, agents and employees be ordered to immediately reopen and grant Plaintiffs' H-2B petitions and extend the labor certifications for the time necessary to provide meaningful relief for each individual plaintiff. On January 17, 2017, the court heard argument on the motion and gave the parties until January 31, 2017, to try to settle this matter. *See* Minutes, ECF No. 38. On January 29, 2017, the Defendants advised the court that a settlement between the parties was not reached. *See* Status Report, ECF No. 42. Having reviewed all pertinent pleadings filed herein and relevant case law, as well as having heard argument from counsel, the court hereby issues this Report and Recommendation to deny the Plaintiffs' Motion for Preliminary Injunction.[2]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Attorney General Sessions is automatically substituted as a party herein.

[2] The court apologizes for the delay in issuing its Report and Recommendation.

# BACKGROUND

## A.    Relevant Statutory and Regulatory Provisions

The Immigration and Nationality Act of 1952 (the "INA") established a framework for immigration regulations that permit the admission of temporary foreign workers into the United States. *See* INA, Pub. L. No. 82-414, 66 Stat. 163 (codified as amended at 8 U.S.C. §§ 1101 *et seq*.). Under the INA, the Secretary of Homeland Security[3] has broad discretion to prescribe the terms and conditions under which non-immigrants may come to the United States for work purposes. *See* 8 U.S.C. § 1184(a)(1) and (c)(1).[4]

Pertinent to the instant motion is the H-2B visa program, which permits employers to hire and bring nonimmigrants to the United States to fill temporary, nonagricultural jobs. According to the regulations,

> [a]n H-2B classification applies to an alien who is coming temporarily to the United States to perform nonagricultural work of a temporary or seasonal nature, if there are not sufficient workers who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such services or labor.

8 C.F.R. § 214.2(h)(1)(ii)(D).

On Guam, an employer wishing to hire H-2B workers must first "apply for a temporary labor certification with the Governor of Guam." 8 C.F.R. § 214.2(h)(6)(iii)(A). *See also* 8 C.F.R. § 214.2(h)(6)(v)(A). Said labor certification serves as "advice to the director [of USCIS] on whether or not United States workers capable of performing the temporary services or labor are available and

---

[3] The Homeland Security Act of 2002 ("HSA") dismantled the former Immigration and Naturalization Service ("INS") and separated the former agency into three components within the newly created Department of Homeland Security ("DHS"). HSA, Pub. L. 107-296, 116 Stat. 2135. One such component is the U.S. Citizenship and Immigration Services ("USCIS"), which oversees lawful immigration to the United States.

[4] The text of the statute actually references the Attorney General, however, as of March 1, 2003, in accordance with section 1517 of Title XV of the HSA, any reference to the Attorney General in a provision of the INA describing functions which were transferred from the Attorney General or other Department of Justice official to the Department of Homeland Security by the HSA "shall be deemed to refer to the Secretary" of Homeland Security. *See* 6 U.S.C. § 557 (2003) (codifying HSA, Title XV, Sec. 1517).

whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers."  8 C.F.R. § 214.2(h)(6)(iii)(A).  After obtaining the temporary labor certification, the prospective employer must file an H-2B petition, accompanied by the approved temporary labor certification, with USCIS.  8 C.F.R. § 214.2(h)(6)(v)(A) and (h)(6)(vi)(A).

Because an H-2B worker "is coming temporarily to the United States to perform temporary services or labor," 8 C.F.R. § 214.2(h)(6)(i)(A), the regulations require that an H-2B petition must also be accompanied by a statement of need, which "describ[es] in detail the temporary situation or conditions which make it necessary to bring the alien to the United States  and whether the need is a one-time occurrence, seasonal, peakload, or intermittent." 8 C.F.R. § 214.2(h)(6)(vi)(D). The term "temporary service or labor" is not defined in the INA, but DHS regulations define this phrase as referring to "any job in which the petitioner's need for the duties to be performed by the employee(s) is temporary, whether or not the underlying job can be described as permanent or temporary." 8 C.F.R. § 214.2(h)(6)(ii)(A).

> Employment is of a temporary nature when the employer needs a worker for a limited period of time.  The employer must establish that the need for the employee will end in the near, definable future.  Generally, that period of time will be limited to one year or less, but in the case of a one-time event could last up to 3 years.

8 C.F.R. § 214.2(h)(6)(ii)(B).

As noted, prospective employers must demonstrate that their need for temporary labor or services fits into one of four categories: one-time occurrence, seasonal, peakload, or intermittent. *Id.*; *see also* 8 C.F.R. § 214.2(h)(6)(vi)(D).  Relevant to the Plaintiffs' claims are the one-time occurrence and peakload categories.  If an employer claims a one-time occurrence need, the employer

> must establish that it has not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future, or that it has an employment situation that is otherwise permanent, but a temporary event of a short duration has created the need for a temporary worker.

8 C.F.R. § 214.2(h)(6)(ii)(B)(1).

///

To demonstrate a peakload need for temporary H-2B workers, an employer

> must establish that it regularly employs permanent workers to perform the services or labor at the place of employment and that it needs to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short-term demand and that the temporary additions to staff will not become a part of the petitioner's regular operation.

8 C.F.R. § 214.2(h)(6)(ii)(B)(3).

The INA places the burden of proof upon the employer – as the applicant – to establish that said employer (and the prospective employee(s)) is eligible for H-2B classification. 8 U.S.C. § 1361. If the evidence submitted with a petition does not establish an employer's eligibility, USCIS may deny the petition, request more information or evidence be submitted within a specified period of time,[5] or notify the employer of its intent to deny the petition and the basis for the proposed denial and require the employer to submit a response within a specified period of time. 8 U.S.C. §103.2(B)(8)(iii).

## B.    Factual Background

The Plaintiffs, consisting of a contracting association and a group of diverse businesses on Guam, have utilized the H-2B non-immigrant temporary visa program for many years. First Am. Compl. ("FAC") at ¶1, ECF No. 23. The Plaintiffs asserted that between the years 1995 and 2015, the USCIS approved approximately 95% of the H-2B petitions filed for Guam. *Id.* at ¶3. However, between June 2015 and May 2016, the Plaintiffs alleged that the approval rate for repeat H-2B petitioners reduced to 6.8%. *Id.* This further decreased to 0.3% during the 2016 calendar year. *Id.*

The Plaintiffs contended that they have "historically relied" on the H-2B program "to supplement their existing workforce because of a peakload need for temporary workers to complete a project, and/or meet the needs of their businesses or because of a one-time occurrence need." *Id.* at ¶6. These employers asserted that they "have not changed the nature of their businesses, their hiring practices, or their contracts" and that "[n]othing about the petitions . . . filed varied in any significant way from previous petitions." *Id.* Nevertheless, the Plaintiffs claimed that beginning in 2015, USCIS began denying their petitions "based on a new interpretation of 'temporary need'" and

---

[5]  The request for more evidence shall be hereinafter be referred to as "RFE."

"without notice to the public." *Id.* at ¶5-6. The Plaintiffs argued that "USCIS' new interpretation of 'temporary need' impacts the substantive rights and expectations of these employers and as such constitutes a legislative rule that must be subject to notice and comment." *Id.* at ¶8. The Plaintiffs further alleged that these denials "had a devastating impact on the [Plaintiffs'] ability to conduct business and a potentially crippling effect on the economy." *Id.* at ¶6. More specifically, the Plaintiffs complained that "[e]mployers who had already entered contracts for military and private projects now find themselves unable to complete those projects and face liquidated damages clauses that will put many employers out of business." *Id.* at ¶5.

Accordingly, on October 4, 2016, the Plaintiffs initiated this action and asserted that jurisdiction was proper in this court because the action arose "under the Constitution of the United States, the [INA] . . . , and the Administrative Procedures Act ('APA'), 5 U.S.C. § 701 *et seq.*" *See* Compl. at ¶10, ECF No. 1. The Plaintiffs also alleged that this court had jurisdiction "under the general federal question statute, 28 U.S.C. §[] 1331, the All Writs Act, 28 U.S.C. § 1651, the declaratory judgments statutes, 28 U.S.C. §§ 2201 and 2202, and the [APA], 5 U.S.C. §§ 702, 704." *Id.* at ¶11.

On October 13, 2016, the Plaintiffs filed the instant Motion for Preliminary Injunction. *See* ECF No. 8. On November 3, 2016, the Defendants filed an Opposition to the motion. *See* ECF No. 13. On November 18, 2016, the Plaintiffs filed a Reply brief to the Defendants' Opposition. *See* ECF No. 16.

On December 14, 2016, the Plaintiffs filed a First Amended Complaint, seeking judicial review of the Defendants' decisions denying the Plaintiffs' H-2B petitions. *See* FAC, ECF No. 23. The FAC alleged that the denials of the petitions (1) were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and (2) are unsupported by substantial evidence in the record. *Id.* at ¶¶15-16. The Plaintiffs asserted the following "claims" against the Defendants: (1) Regulatory Violation, 8 C.F.R. § 214.2 *et seq.*; (2) Violation of the APA, 5 U.S.C. § 553; (3) Violation of the APA, 5 U.S.C. § 706(2)(A); (4) Violation of the APA, 5 U.S.C. § 706(2)(E); (5) Declaratory Judgment Act; (6) Equitable Estoppel; and (7) Injunctive Relief.

///

# LEGAL STANDARDS

## A.    Preliminary Injunction

The Plaintiffs request the court issue a preliminary injunction. "A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citation omitted). "An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must demonstrate (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Id.* at 20. "When the government is a party, these last two factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. V. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Preliminary injunctions can take two forms. *Marlyn Nutraceuticals, Inc. v. Mucos Parma GmbH & Co.*, 571 F.3d 873, 878 (2009). The first is a prohibitory injunction, which restrains a party from taking action and "preserves the status quo pending a determination of the action on the merits." *Id.* (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). The second is a mandatory injunction, which orders a party to take action. *Id.* at 879. "A mandatory injunction 'goes well beyond simply maintaining the status quo . . . and is particularly disfavored.'" *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Generally, "mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Id.* (internal quotation marks omitted).

## B.    Administrative Procedure Act

The Plaintiffs bring the instant action under the APA. *See* 5 U.S.C. §§ 701-706. The APA "empowers federal courts to 'hold unlawful and set aside agency action, findings, and conclusions' if they fail to conform with any of six specified standards. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375 (1989) (quoting 5 U.S.C. § 706(2)). Under the APA, "an agency action must be upheld on review unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th

Cir. 2014) (quoting 5 U.S.C. § 706(2)(A)).  A reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (citation omitted).  The reviewing court's inquiry must be "thorough," but "the standard of review is highly deferential; the agency's decision is entitled to a presumption of regularity, and [the court] may not substitute [its] judgment for that of the agency." *Id.* (quotation marks and citation omitted).

Furthermore, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

## ANALYSIS

### A.    Prohibitory vs Mandatory Injunctions

As an initial matter, the court must determine whether the Plaintiffs seek a prohibitory or mandatory injunction.  The Plaintiffs contend that they do not request a mandatory injunction since the relief requested herein "would not disturb the status quo." Mot. Prelim. Inj. at ¶21, ECF No. 8. The Plaintiffs maintain that the injunction requested would preserve the status quo pending the outcome of the litigation on the merits. *Id.*  The Plaintiffs note that

> USCIS has approved Plaintiffs' and Proposed Class' H-2B petitions based on the peakload or one-time occurrence classification for as many as 30 years in some cases. Plaintiffs are filing the same applications, for the same job category, using the same procedures, with no change in the law or with regard to the relevant facts. The Plaintiffs' and Proposed Class' cases are clearly approvable under the peakload or one-time-occurrence category.  Plaintiffs seek nothing more than to demand that USCIS maintain the status quo.

*Id.*

The Defendants, on the other hand, argue that the Plaintiffs are seeking mandatory injunctive relief since the Plaintiffs are asking this court to order USCIS to "immediately reverse and grant an undefined number of H-2B petitions" which would "undoubtedly represent a clear departure from the status quo." Opp'n at 7,[6] ECF No. 13 (internal quotation marks omitted).  This requested relief,

---

[6] Citations to specific pages of documents filed before the court refer to the internal page numbers contained in the original documents themselves, not the page numbers imprinted on the electronic case filing footer.

according to the Defendants, goes well beyond simply maintaining the status quo. *Id.*

The court agrees with the Defendants. The test for whether an injunction is prohibitory or mandatory can be found in its effect on the "*status quo ante litem,*" which means "the last, uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (quoting *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984)). Here, the last uncontested status between the parties prior to the filing of this action was USCIS's denial of the Plaintiffs' H-2B petitions. While it is true that the USCIS had previously approved the Plaintiffs' H-2B petitions for many years, beginning in 2015 and continuing to the present time, USCIS had denied similar petitions filed by the Plaintiffs. *See* FAC at ¶5, ECF No. 23. The Motion for Preliminary Injunction specifically requested that the court issue an order requiring USCIS to "immediately *reopen and reverse* its decisions and grant" the Plaintiffs' H-2B petitions. Mot. Prelim. Inj. at 5, ECF No. 8 (emphasis added). This request is repeated in the Plaintiffs' Reply Brief, which requested "an order from this [c]ourt remanding the case to USCIS and directing USCIS to *reopen and reverse* the decisions" . . . [which] relate to the 'peakload' and 'one time occurrence' definitions." Reply at 4, ECF No. 16 (emphasis added). It is clear then that what the Plaintiffs seek is affirmative action by USCIS to reverse its prior decisions denying the H-2B petitions filed by the Plaintiffs. This would certainly go beyond preserving the status quo since the court is being asked to order USCIS to alter its earlier decisions. Thus, because the Plaintiffs seek a disfavored mandatory injunction, the Motion for Preliminary Injunction is "subject to heightened scrutiny and should not be issued unless the law and facts clearly favor the [Plaintiffs]." *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

**B.    Preliminary Injunction Factors**

    **1.    Likelihood of Success on the Merits**

The first *Winter* factor is whether the Plaintiffs are likely to succeed on the merits of this case. In support of their motion, the Plaintiffs essentially argue that they are likely to succeed on their claims because (1) the USCIS approved similar H-2B petitions in the past, and (2) the Guam Department of Labor ("GDOL") has already issued the Plaintiffs temporary labor certifications, thus determining that the need for the labor or services sought by the Plaintiffs is temporary as defined

by one of the four regulatory standards.

In deciding whether the Plaintiffs are likely to succeed on the merits of their Motion for Preliminary Injunction, the court is cognizant that the APA provides the authority for its review. *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), *overruled on other grounds by Winter, 555 U.S. 7 (2008).* In relevant part, the APA instructs that a reviewing court may set aside only agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under this standard is narrow, and the court may not substitute its judgment for that of the agency. *McNair*, 537 F.3d at 987 (citing *U.S. Postal Service v. Gregory*, 534 U.S. 1, 6-7 (2001)). Instead, a decision may only be reversed as arbitrary and capricious "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

Plaintiffs argue that they are likely to succeed on the merits because Defendants' denial of their H-2B petitions were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. It is Plaintiffs' contention that the facts and law clearly favor them.

In order to determine whether Plaintiffs are likely to succeed on the merits of this case, the court finds that it must examine the H-2B applications filed by Plaintiffs and determine whether Defendants' denials were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

The Petitions which Plaintiffs have submitted for the court's review are contained in the exhibits to the FAC. The court will review each submitted petition and/or summary.

a.     Petitions by Ace Builders, LLC

Plaintiff Ace Builders, LLC ("Ace Builders") has submitted a summary sheet that lists nine petitions which it filed with USCIS. *See* Ex. 5[7] to FAC, ECF No. 23-5. However, no individual

---

[7] The FAC asserts that Exhibit 5 is the "2016 Importation and Extensions Spreadsheet for Ace Builders." *See* FAC at ¶32, n.7, ECF No. 23. The court notes, however, that Exhibit 5 is a summary table sent in an email from "Chit Bathan <chit.bathan@coretechintl.com>." Ex. 5, ECF No. 23-5. The court will presume that Exhibit 5 applies to Ace Builders as asserted in the FAC.

petitions were attached to Exhibit 5. All of the petitions were for extensions of previously admitted

H-2B workers. All of the petitions were denied and appeals filed, except for the ninth petition which

had a pending RFE that was then due on October 11, 2016.

The petitions which sought the extensions of workers are as follows:

| | | | |
|---|---|---|---|
| 1. | WAC1606150956 | 2 | HVAC workers |
| 2. | WAC1606150966 | 9 | Heavy Equipment operators |
| 3. | WAC1606150304 | 24 | Reinforcing Metal Workers |
| 4. | WAC1606150329 | 26 | Plumbers |
| 5. | WAC1606150357 | 7 | Equipment Mechanics |
| 6. | WAC1606250932 | 42 | Electricians |
| 7. | WAC1606351038 | 148 | Carpenters |
| 8. | WAC1606150270 | 19 | Welders |
| 9. | WAC1606150417 | 111 | Cement Masons |

b.     Petitions by BME & Son's Inc.

In Exhibit 6a to the FAC, Plaintiff BME & Son's Inc. ("BME") includes a summary which

lists Defendant USCIS's actions in relation to its petitions. *See* ECF No. 23-6. The summary is

divided into three block categories. The first block category refers to "H-2B Petitions approved after

receiving a Response to RFE questioning Temporary Need." Seven petitions are listed therein as

follows:

1.  WAC1215751603 (1 heavy equipment operator ext) - Approved September 6
2.  WAC1215850689 (1 reinforcing metal worker ext) - Approved September 6
3.  WAC1217150354 (cement mason import) - Approved September 11, 2012
4.  WAC1418951164 (7 carpenter ext) - Approved September 22, 2014
5.  WAC1515551416 (cement mason import) - Approved August 27, 2015
6.  WAC1515551377 (sheet metal worker import) - Approved August 28, 2015
7.  WAC1515551437 (camp cook import) - Approved August 27, 2015

The second block category refers to "H-2B Petitions denied in 2016 based on temporary

need:" Three petitions are listed in said block as follows:

1.  WAC1605951222 (electrician ext) - Denied May 25, 2016
2.  WAC1605950593 (carpenter ext) - Denied May 28, 2016
3.  WAC1605951187 (a/c & refrigeration mechanic ext) - Denied May 30, 2016

The third block category refers to "Employer's current status of H-2B petitions (Pending,

RFE, Appeal Response submitted)." Petitions in this block category are listed as follows:

1.  WAC1605951181 (reinforcing metal worker ext) - REF received April 18, 2016
2.  WAC1605951222 (electrician ext) - Appeal submitted
3.  WAC1605950593 (carpenter ext) - Appeal submitted
4.  WAC1605951187 (a/c & refrigeration mechanic ext) - Appeal submitted
5.  WAC1613654209 (3 reinforcing metal worker ext) - received RFE notice

    5.   WAC1613653800 (4 heavy equipment operator ext) - received RFE notice
    6.   WAC1605951226 (27 cement mason ext) - received RFE notice
    7.   WAC1613653731 (20 cement mason ext) - received RFE notice
    8.   WAC1613653765 (4 electrician ext) - received RFE notice
    9.   WAC1613654045 (1 sheet metal worker ext) - received RFE notice
  10.   WAC1613653998 (20 carpenter ext) - received RFE notice
  11.   WAC1613653817 (1 heavy equipment mechanic) - received RFE notice
  12.   WAC1613654199 (3 camp cook ext) - received RFE notice

Exhibits 6a and 6b contains nine (9) petitions for H-2B visas which were denied by USCIS. *See* ECF Nos. 23-6 and 23-7. The court will enumerate these petitions further and briefly note USCIS's determination on the petitions.

    i.   *Petition WAC1605951181*

With respect to Petition WAC1605951181, USCIS advised BME that its petition seeking temporary nonagricultural worker classification on behalf of 12 reinforcing metal workers had been denied for the reasons stated in the letter's attachment. *See* Ex. 6a, at 11-19, ECF No. 23-6.

The letter reiterated that BME had "request[ed] the H-2B visa continuation of the previously approved employment for the beneficiaries" and that BME desired "to extend their H-2B classification for a year, from December 26, 2015 to December 25, 2016, in order for the beneficiaries to continue work as reinforcing metal workers." *Id.* at 13. In the petition, the beneficiaries' employment was declared as "'Peak load' with an 'unpredictable' temporary need." *Id.*

The letter further informed BME that it did not provide "sufficient evidence to establish . . . temporary need." *Id.* In addition, USCIS informed BME that the petition failed to show that BME's need for the H-2B workers would end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). *Id.* The letter also informed Plaintiff that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff would not become a part of BME's regular operations (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(3)). *Id.*

With regard to said petition, USCIS advised that it considered the following RFE responses:

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- BME's response letter to the Request for Evidence;
- Copies of BME's permanent employees recent pay-stubs;
- Copies of newspaper articles regarding the military build-up increase in tourism industry;
- Copies of contracts;
- Affidavit from the GDOL dated April 14, 2016;
- Copy of the Quarterly State Wage Report for the last two (2) quarters of 2015;
- Copies of the beneficiaries' recent pay stubs; [and]
- Copies of the beneficiaries' Forms W-2GU for Calendar Year 2015.

### ii.     *Petition WAC1605951187*

With regard to Petition WAC1605951187, USCIS advised BME that its petition seeking temporary nonagricultural worker classification on behalf of five beneficiaries had been denied for the reasons stated in the letter's attachment. *See* Ex. 6a at 20-25 and 35-38, ECF No. 23-6.

Similar to the prior letter referenced above, the letter informed BME that it had "request[ed] the H-2B visa continuation of the previously approved employment for five (5) beneficiaries" and that BME desired to extend their H-2B classification for a year, from December 26, 2015 to December 25, 2016, in order to continue their work as reinforcing A/C & Refrigeration Mechanics. *Id.* at 22.

The letter also informed BME that it did not provide "sufficient evidence to establish . . . temporary need." *Id.* In addition, it informed BME that the petition failed to show that BME's need for the H-2B workers would end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)). The letter also advised BME that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff would not become a part of BME's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(3)).

With regard to the above petition, USCIS advised that it considered the following RFE responses:

- Letter of support from the Corporate Officer, Bernadette P. Maranan;
- Affidavit of the Vice Corporate Officer;
- Pay stubs of BME's permanent workers;
- Projects Summary Sheet and Corporate Information;
- Projects for the Guam International Airport authority, Grandview Development LLC, Port Authority of Guam, and the Guam Preservation Trust;
- Schedule and itinerary for the ongoing construction projects;

- Letter from the Administrator of the Alien Labor Processing & Certification Division for the GDOL; [and]
- Newspaper articles on the U.S. Military build-up and increasing of Guam tourism industry.

### iii.     *Petition WAC1605950593*

With regard to Petition WAC1605950593, USCIS advised BME that its petition seeking temporary nonagricultural worker classification on behalf of 19 beneficiaries had been denied for the reasons stated in the letter's attachment. *See* Ex. 6a at 26-34, ECF No. 23-6.

Similar to prior referenced letters, this letter informed BME that it was "requesting the H-2B visa continuation of the previously approved employment for nineteen (19) beneficiaries" and that BME desired to "extend their H-2B classification for a year, from December 26, 2015 to December 25, 2016, in order to continue work as carpenters." *Id.* at 32.

Like the prior letters, this letter also informed BME that it did not provide "sufficient evidence to establish . . . temporary need." *Id.*  In addition, it informed BME that the petition failed to show that BME's need for the H-2B workers would end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)).  The letter also advised BME that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of BME's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(3)).

USCIS also advised that in reaching its decision, it considered all of the documentation filed with the Petition and all of the documents submitted in response to the RFE.  Specifically, USCIS considered the  following RFE responses:

- Another employment support letter and statement of need;
- Building permits and notice to proceed;
- Payment bond;
- Proof of recruitment efforts; and
- Duplicate copy of article of corporation, contracts, employees' pay stub, etc.

### iv.     *Petition WAC1605951222*

 With regard to Petition WAC1605951222, USCIS advised BME that its Petition seeking temporary nonagricultural worker classification on behalf of five beneficiaries had been denied for

the reasons stated in the letter's attachment.  *See* Ex. 6a at 39-48, ECF No. 23-6.

Similar to prior referenced letters, this letter informed BME that it was "requesting the H-2B visa continuation of the previously approved employment for five (5) beneficiaries" and that BME desired to "extend their H-2B classification for a year, December 26, 2015 - December 25, 2016, in order for them to continue to work as Electricians."  *Id.* at 41.

Like the prior letters, this letter also informed BME that it did not provide "sufficient evidence to establish . . . temporary need."  *Id.*  In addition, it informed BME that the petition failed to show that BME's need for the H-2B workers would end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)).  The letter also advised BME that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of BME's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(3)).

USCIS also advised that in reaching its decision, it considered all of the documentation filed with the Petition and all of the documents submitted in response to the RFE, which included:

- Letter of support from the Corporate Officer, Bernadette P. Maranan;
- Affidavit of the Vice Corporate Officer;
- Pay stubs of BME's permanent workers;
- Projects Summary Sheet and Corporate Information;
- Projects for the Guam International Airport Authority, Grandview Development LLC, Port Authority of Guam, and the Guam Preservation Trust;
- Schedule and itinerary for the ongoing construction projects;
- Letter from the Administrator of the Alien Labor Processing & Certification Division for the GDOL; [and]
- Newspaper articles on the U.S. Military build-up and increasing of Guam tourism industry.

v.    *Petition WAC1613654199*

In Petition WAC1613654199, BME sought to employ three camp cooks and received a RFE notice.  *See* Ex. 6a at 49, ECF No. 23-6, and Ex. 6b at 50-53, ECF No. 23-7. The notice indicated that BME was seeking to employ these three camp cooks on a one-time occurrence need.  In seeking a RFE, USCIS noted that BME's statement of need was insufficient to establish a temporary need based upon a one-time occurrence in its petition.  *Id.* at 51-52.

///

vi.    *Petition WAC1613653817*

In Petition WAC1613653817, BME sought to employ a heavy equipment mechanic based upon a one-time occurrence need. *See* Ex. 6b at 54-57, ECF No. 23-7. In issuing the RFE notice, USCIS similarly noted that BME failed to establish a temporary need based upon a one-time occurrence in its Petition. *Id.* at 56-57.

vii.    *Petition WAC1613653765*

In Petition WAC1613657657, BME sought an extension of stay with a continuation of previously approved employment for four electricians based upon a one-time occurrence need. *See* Ex. 6b at 58-63, ECF No. 23-7. In issuing the RFE notice, USCIS similarly noted that BME failed to establish a temporary need based upon a one-time occurrence in its Petition. *Id.* at 60-61. In addition, USCIS pointed out that its records indicated that the beneficiaries may have been employed as carpenters in previous related petitions. *Id.* at 61 and 63.

viii.    *Petition WAC1613653800*

In Petition WAC1613653800, BME sought to employ four heavy equipment operators based upon a one-time occurrence need. *See* Ex. 6b at 64-68, ECF No. 23-7. In issuing the RFE notice, USCIS similarly noted that BME failed to establish a temporary need based upon a one-time occurrence in its Petition. *Id.* at 66-67.

ix.    *Petition WAC1605951226*

In Petition WAC1605951226, BME sought to employ 27 cement masons from December 26, 2015 to December 25, 2016 based upon a peakload need for the services of the said workers. *See* Ex. 6b at 69-74, ECF No. 23-7. In issuing the RFE notice, USCIS noted that BME failed to establish a temporary need based upon a peakload need. *Id.* at 72-73.

c.    Guam Tropical Dive Station, Inc.

Plaintiff Guam Tropical Dive Station Inc. ("GTDS") did not include any petition in Exhibit 7 to the FAC. *See* ECF No. 23-8. However, the company did provide a summary sheet indicating that four separate petitions for scuba instructors were approved between November 15, 2012, to August 31, 2015. *Id.* In addition, GTDS noted that Petition WAC1521950443 which sought the visa extension of an H-2B scuba instructor employee was denied on January 14, 2016. *Id.* GTDS's

summary also included Petition WAC1611151778, which sought to employ a scuba instructor. *Id.* Said petition was withdrawn when USCIS sought a RFE. *Id.*

### d.    Petitions by Guam XRay dba Guam Radiology Consultants

Plaintiff Guam XRay dba Guam Radiology Consultants ("GRC") has included a summary sheet and three petitions to the FAC in this action. *See* Ex. 8, ECF No. 23-9.  One petition was denied and two petitions sought a RFE.[8]  These petitions are included in Exhibit 8 to the FAC.

#### i.    *Petition WAC1607251429*

In Petition WAC1607251429, Plaintiff sought to extend the employment of a Radiologic Technologist. *Id.* at 76-77.  USCIS denied the petition as having been abandoned stating that GRC failed to respond to a RFE within the allotted time frame. *Id.* at 77-78.

#### ii.    *Petition WAC1620451595*

In Petition WAC1620451595, GRC sought to employ a  Radiologic Technologist based upon a peakload need. *Id.* at 79-82.  USCIS issued a RFE to GRC after having made a preliminary determination that this GRC petition was insufficient to establish the temporary requirements of a peakload need. *Id.* at 81-82.

#### iii.    *Petition WAC1622651283*

In Petition WAC1622651283, GRC sought to extend the employment of two Radiologic Technologists based upon a peakload need. *Id.* at 83-86.  USCIS issued a RFE to GRC following a preliminary determination that GRC failed to meet the temporary requirements of a peakload need. *Id.* at 85-86.

### e.    Petitions by Inland Builders Corporation

Plaintiff Inland Builders Corporation ("IBC") has included 16 H-2B petitions in this action. These petitions are included in Exhibits 9a-e of the FAC. *See* ECF Nos. 23-10 to 23-14.

#### i.    *Petition WAC1609850289*

In Petition WAC1609850289, IBC sought to extend the temporary employment of five

---

[8] This differed from the information on the summary, which indicated that two petitions were denied in 2016 and one petition was pending a RFE.

Structural Steel Workers for one year from February 24, 2016, to February 23, 2017 based upon a

one-time occurrence with an unpredictable temporary need. *See* Ex. 9a at 89-97, ECF No. 23-10.

In denying the petition, USCIS noted that IBC failed to establish a temporary need based upon a one-

time occurrence in its petition. Specifically, USCIS stated:

> A need cannot be considered temporary when there is a continuous need for the
> beneficiaries' services or labor, and/or a continuous need for temporary workers to
> provide the same services and labor. You claim that the temporary need will end when
> the specific contracts are completed, however, by the very nature of your business, you
> will need to acquire additional contracts for your business to thrive. You have not
> established that the need is temporary. The filing lacks evidence of a specific point in
> time at which the need for the temporary employees will end in the near, definable
> future.

*Id.* at 93.

ii.    *Petition WAC1609851081*

In Petition WAC1609851081, IBC sought to employ 17 carpenters for one year from

February 24, 2016, to February 23, 2017 based upon a one-time occurrence need. *See* Ex. 9a at 98-

108, ECF No. 23-10. In a letter dated August 10, 2016, USCIS denied the petition generally for the

same reasons stated in Petition WAC1609850289 (the Structural Steel Workers petition referenced

above).

iii.    *Petition WAC1605250760*

In Petition WAC1605250760, IBC sought to extend the employment of four cement masons

for one year from December 12, 2015, to October 4, 2016, based upon a peakload[9] need. *See* Ex. 9a

at 109-119, ECF No. 23-10. In a letter dated August 8, 2016, USCIS denied the petition. *Id.* The

letter further informed IBC that it did not provide "sufficient evidence to establish . . . temporary

need." *Id.* at 112. It further informed IBC that the petition failed to show that IBC's need for the

H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)). The letter

also advised IBC that it failed to show that it regularly employed permanent workers to perform the

services or labor at the place of employment and that it needed to supplement its permanent staff at

the place of employment on a temporary basis due to seasonal or short term demand and that the

---

[9]  IBC, however, submitted a RFE response claiming peakload in addition to a one-time
occurrence temporary need. *Id.* at 111-12.

temporary additions to staff will not become a part of IBC's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(3)). In addition, USCIS informed IBC that it failed to establish that it had not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future or that it has an employment situation that is permanent but a temporary event of a short duration has created the need for a temporary worker (citing 8 C.F.R. § 214.2 (h)(6)(ii) (B)(1)). More specifically, USCIS stated:

> [Y]ou claim that the U.S. military and tourism are a major factor towards the increase in your business activity, claiming that they have created a surge in the construction industry of Guam. You have not supported this claim with sufficient detail in your statement of need and with the evidence initially submitted. The military and tourism are major industries of economic impact to Guam. Yet, you have not provided sufficient detail in a statement of need, or supporting documentation, to establish that there has been an increase in the demand for the services [of] your cement masons, because of a direct correlation to the military buildup and tourism. Without sufficient detail, it is indeterminable whether the construction projects are directly due to the military and tourism. The record does not demonstrate and support your claim that the military and tourism are a directly contributing factor to you having a peakload need.

*Id.* at 113.

### iv.  *Petition WAC1609851335*

In Petition WAC1609851335, IBC sought to employ six cement masons for one year based upon a one-time occurrence need. *See* Ex. 9a at 120-26, ECF No. 23-10 and Ex. 9b at 127-29, ECF No. 23-11. In a letter dated August 5, 2016, USCIS denied the petition. *Id.* The letter further informed IBC that it had previously granted a petition for the beneficiaries based upon a peakload need and thus there was a discrepancy in the nature of the need. Ex. 9a at 122, ECF No. 23-10. It informed IBC that the petition failed to show that IBC's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)) and opined that IBC's "work experience agreement with the [GDOL] does not establish that you have a one-time occurrence need for the beneficiaries' services or labor." *Id.* at 124. USCIS stated that since IBC's need is based on 'the current unavailability of U.S. workers in Guam," IBC would continue to have a need for the beneficiary's services as long as the situation continued. *Id.*

### v.  *Petition WAC1609850988*

In Petition WAC1609850988, IBC sought to employ nine carpenters for one year based upon a one-time occurrence need. *See* Ex. 9b at 130-138, ECF No. 23-11. In a letter dated July 27, 2016,

USCIS denied the petition. *Id.* The letter further informed IBC that it had previously granted a petition for the beneficiaries based upon a peakload need and thus there was a discrepancy in the nature of the need.[10]

### vi.    *Petition WAC1609850878*

In Petition WAC1609850878, IBC sought to extend the employment of six[11] cement masons for one year from February 24, 2016, to February 23, 2017, based upon a one-time occurrence with an unpredictable temporary need. *See* Ex. 9b at 139-51, ECF No. 23-11. In a letter dated July 26, 2016, USCIS denied the petition. *Id.* The letter further informed IBC that it had previously granted a petition for the beneficiaries. *Id.* at 141. In denying the petition, USCIS noted that IBC was in the construction industry and obtaining construction contracts was the nature of its business and the fact that a construction contract existed at any one time could not be considered "an event of a short duration." *Id.* at 143. It was indicated that this was IBC's second filing for the beneficiaries, "the previous actions indicate otherwise from being temporary and unpredictable." *Id.*

### vii.    *Petition WAC1609850764*

In Petition WAC1609850764, IBC sought to extend the employment of a tower crane operator[12] for one year from February 24, 2016 to February 23, 2017 based upon a one-time occurrence with an unpredictable temporary need. *See* Ex. 9b at 152-62, ECF No. 23-11. In a letter dated July 26, 2016, USCIS denied the petition. *Id.* The letter further informed IBC that it had previously granted a petition for the beneficiary. *Id.* at 154. The letter further informed IBC that it

---

[10] It appears that not all the pages of the July 27th letter were appended to the exhibit because page 134 ends with "to support this assertion you provided;" and the next page (p.135) begins the RFE issued by USCIS on March 12, 2016, in relation to this petition.

[11] The court notes there is a discrepancy between the face of the USCIS letter and its attachment. The letter states the petition was filed on behalf of five beneficiaries, but the attachment indicates that the petition relates to six beneficiaries. *See* Ex. 9b at 139 and 141, ECF No. 23-11. For purposes of this Report and Recommendation, the court will use the number of beneficiaries referenced in the letter's attachment.

[12] The court notes there is a discrepancy between the face of the USCIS letter and its attachment. The letter states the petition was filed on behalf of five beneficiaries, but the attachment indicates that the petition relates to just one beneficiary. *See* Ex. 9b at 152 and 154, ECF No. 23-11. For purposes of this Report and Recommendation, the court will use the single beneficiary referenced in the letter's attachment.

did not provide "sufficient evidence to establish . . . temporary need." *Id.* at 155. It further informed IBC that the petition failed to show that IBC's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)). In addition, it informed that IBC that it failed to establish that it had not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future or that it has an employment situation that is permanent but a temporary event of a short duration has created the need for a temporary worker (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(1)).

viii.    *Petition WAC1609851299*

In Petition WAC1609851299, IBC sought to extend the employment of seven Reinforcing Metal Workers for one year from February 24, 2016, to February 23, 2017, based upon a one-time occurrence with an unpredictable temporary need. *See* Ex. 9b at 163-66, ECF No. 23-11 and Ex. 9c at 167-79, ECF No. 23-12. In a letter dated July 9, 2016, USCIS denied the Petition. *Id.* The letter further informed IBC that it had previously granted a petition for the beneficiaries. The letter further informed IBC that it did not provide "sufficient evidence to establish . . . temporary need." *Id.* at 166. It further informed IBC that the petition failed to show that IBC's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)). In addition, it informed IBC that it failed to establish that it had not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future or that it has an employment situation that is permanent but a temporary event of a short duration has created the need for a temporary worker (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(1)). The letter also noted that IBC's nature of business was in the construction industry and the evidence did not support a finding that IBC's need for the reinforcing metal workers was temporary. *Id.* at 169.

ix.    *Petition WAC1609851016*

In Petition WAC1609851016, IBC sought to extend the employment of four Landscapers for one year from February 24, 2016, to February 23, 2017, based upon a one-time occurrence with an unpredictable temporary need. *See* Ex. 9c at 180-197, ECF No. 23-12. In a letter dated July 9, 2016, USCIS denied the petition. *Id.* The letter further informed IBC that it did not provide "sufficient evidence to establish . . . temporary need" even though IBC referred to "the U.S. Military Buildup,

tourism, and the lack of manpower resources, since no qualified, able, and available U.S. workers applied for the position." *Id.* at 183 and 185. It further informed IBC that the petition failed to show that IBC's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6) (ii)(B)). In addition, it informed that IBC that it failed to establish that it had not employed workers to perform the services or labor in the past and that it will not need workers to perform the services or labor in the future or that it has an employment situation that is permanent but a temporary event of a short duration has created the need for a temporary worker (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(1)). The letter also noted that IBC's nature of business was in the construction industry and that it had "a continuous need for the use of temporary H-2B employees, which would be contradictory to the temporary nature of the H-2B classification." *Id.* at 185. Moreover, the letter concluded that evidence submitted by IBC did not support IBC's contention or implication that all the services of the four landscapers were directly related to the military build-up and/or tourism. *Id.* at 186.

x.  *Petition WAC1609851353*

In Petition WAC1609851353, IBC sought to employ a Plasterer based upon a one-time occurrence with an unpredictable temporary need. *See* Ex. 9c at 198-203, ECF No. 23-12. USCIS issued a RFE to IBC, and ultimately denied the petition. *Id.* at 198.

xi.  *Petition WAC1524950868*

In Petition WAC1524950868, IBC sought to employ two[13] unnamed beneficiaries to work as reinforcing metal workers from September 9, 2015, to September 18, 2016, based upon a peakload with an unpredictable temporary need. *See* Ex. 9c at 204-06, ECF No. 23-12 and Ex. 9d at 207-14, ECF No. 23-13. The petition was denied on July 1, 2016, because IBC failed to demonstrate a

---

[13] There is a discrepancy with regard to the number of beneficiaries covered by this petition. The summary provided for IBC's petitions indicates that said petition was for "11 reinforcing metal worker[s]." *See* Summary, Ex. 9a at 88, ECF No. 23-10. This is consistent with the subsequent RFE issued, which indicates that IBC was "requesting the H-2B visa continuation of the previously approved employment for eleven (11) beneficiaries." Ex. 9d at 212, ECF No. 23-13. In the attachment to the letter issued on July 1, 2016, however, USCIS stated that the petition was for "two unnamed beneficiaries." *See* Ex. 9c at 206, ECF No. 23-12. For purposes of this Report and Recommendation, the court will use the number of beneficiaries referenced in the letter's attachment.

temporary need for the workers. *Id.* Specifically, USCIS noted that IBC had multiple construction

contracts and stated that

> [o]btaining contracts appears to be a part of the scope of your normal operations, as it is essential for your business to operate and thrive. In obtaining these contracts as part of your normal operations, you willingly agree upon these contracts with consideration to your workforce of permanent employees. To take on these additional projects and contracts, while also taking into account your temporary employees, does not establish that the employment is on a temporary basis and the beneficiaries will not become a part of [IBC's] regular operation. The evidence indicates a propensity for an ongoing need and use of beneficiaries as part of maintaining your normal operations. Merely providing information regarding your construction projects does not establish a temporary need.

*Id.* at 209.

xii.     *Petition WAC1609850985*

In Petition WAC1609850985, IBC sought to employ three plumbers for a one year period

from February 24, 2016, to February 23, 2017, based upon a temporary need alleged to be one-time

occurrence in nature. *See* Ex. 9d at 215-25, ECF No. 23-13. USCIS denied the petition and noted

that IBC had not established that the employment of these beneficiaries is of a temporary nature

based upon a one-time occurrence since IBC had employed workers as plumbers in the past and

currently maintained a local work force that consists in part of plumbers. *Id.* at 218. Additionally,

USCIS pointed out that IBC had "previously employed the beneficiaries under the H-2B

classification, for the same position since they entered the U.S. in 2015." *Id.* at 220. Since this was

IBC's second filing for these beneficiaries, IBC's "actions indicated otherwise from being temporary

and unpredictable." *Id.*

xiii.     *Petition WAC1609851261*

In Petition WAC1609851261, IBC sought to extend employment of three structural steel

workers for about 12 months, based upon a one-time occurrence with an unpredictable temporary

need. *See* Ex. 9d at 226-37, ECF No. 23-13. USCIS denied the petition because IBC had not

"provided sufficient evidence to establish . . . temporary need." *Id.* at 229. USCIS noted that IBC

had obtained new contracts in March, July and December 2015 as part of its normal operations and

stated that "[a] growth in your business cannot be seen as a temporary event as contemplated by the

regulations." *Id.* at 230.

*///*

xiv.    *Petition WAC1609850895*

In Petition WAC1609850895, IBC sought to employ two heavy equipment mechanics for a period from February 24, 2016, to February 23, 2017, based upon a temporary need alleged to be one-time occurrence in nature. *See* Ex. 9d at 238-46, ECF No. 23-13 and Ex. 9e at 247-48, ECF No. 23-14. USCIS denied the petition finding that IBC had not sufficiently established a temporary need for these services that was a one-time occurrence need. *Id.* at 240. USCIS noted that IBC employed heavy equipment mechanics in the past and currently maintained a local work force consisting in part of heavy equipment mechanics and because IBC was in the construction business, it would always have a need for such workers. *Id.* at 241-42. Thus, USCIS concluded that IBC had not satisfied the first criterion described at 8 C.F.R. § 214.2(h)(6)(ii)(B)(1) requiring that an employer not have employed workers to perform the services or labor in the past and will not need workers to perform the service or labor in the future. *Id.* USCIS also found that IBC had not met the second criterion of 8 C.F.R. § 214.2(h)(6)(ii)(B)(1), requiring IBC to establish that it had an employment situation that is otherwise permanent, but a temporary even of short duration has created the need for temporary workers. *Id.* at 242.

xv.    *Petition WAC1609850732*

In Petition WAC1609850732, IBC sought to extend the employment of five electricians for about 12 months, based upon a one-time occurrence need. *See* Ex. 9e at 249-60, ECF No. 23-14. In a letter dated June 27, 2016, USCIS denied the petition generally for the same reasons stated in Petition WAC1609851261 (the structural steel workers petition referenced in xiii above). *Id.*

xvi.    *Petition WAC1605350904*

In Petition WAC1605350904, IBC sought to extend the employment of an electrician from December 12, 2015, to May 16, 2016, based upon a peakload need. *See* Ex. 9e at 261-68, ECF No. 23-14. In a letter dated June 4, 2016, USCIS denied the petition.[14] *Id.* USCIS determined that "The totality of the record of evidence does no establish that [IBC] compl[ied] with the requirements of 8 C.F.R. § 214.2(b)(6)(ii)(B)(3)." *Id.* at 263. In addition, USCIS stated "[t]he record lacks

---

[14]  Page 3 of the letter was not provided in the exhibit. *See id.* at 262-63.

sufficient independent and objective documentary evidence that the existence of special temproary circumstances created by the current situation that would indicate you are operating at a peakload, hence creating a temporary need for one (1) electrician to supplement your permanent staff in the near, definable future." *Id.* USCIS further noted that the beneficiary had been previously employed by IBC since May 2013, and the evidence did not demonstrate that said temporary worker would not become part of IBC's regular business operation. *Id.* at 264.

### f.    Petitions by Landscape Management Systems, Inc.

Plaintiff Landscape Management Systems, Inc. ("LMS") has included five H-2B petitions in this action. These petitions are included in Exhibit 10 to the FAC. *See* Ex. 10, ECF No. 23-15. Of the five petitions, one was denied and the four remaining petitions had a RFE. *See* Summary, Ex. 10 at 269, ECF No. 23-15.

### i.    *Petition WAC1602250808*

In Petition WAC1602250808, LMS sought to extend the employment of two[15] landscape gardeners from November 1, 2015, to April 30, 2016, based upon a peakload with an unpredictable temporary need. *Id.* at 270-81. In a letter dated July 15, 2016, USCIS denied the petition. *Id.* The letter advised LMS that its RFE response now indicated that LMS's temporary need was based upon a one-time occurrence with an unpredictable temporary need. *Id.* at 275. USCIS further informed LMS that it had previously made multiple filings and extension requests for the two beneficiaries as follows:

Henir Laroza Matutino:

• WAC0917852326, validity dates of 11/23/2009 - 09/30/2010;
• WAC1100151633, granted extension with validity date expiring on 09/30/2011;
•  WAC1225150855, validity dates of 0l/02/2013 - 10/31/2013;
• WAC1402350562, validity dates of 11/01/2013 - 10/31/2014; and,
• WAC1502351139, validity dates of 11/01/2014 - 10/31/2015.

Rolando Duquiatan

• WAC1225150855, validity dates of 01/02/2013 - 10/31/2013;

---

[15]    The Summary indicates that this petition was for three landscape gardeners. *See* Summary, Ex. 10 at 269, ECF No. 23-15. For purposes of this Report and Recommendation, the court will use the number of beneficiaries referenced in the letter's attachment.

- WAC1402350562, validity dates of 11/01/2013 - 10/31/2014; and,
- WAC1502351139, validity dates of 11/01/2014 - 10/31/2015.

*Id.* at 276.

Referring to LMS's prior filings, USCIS indicated that LMS did not show that its need was a one-time occurrence and was unpredictable. *Id.* Rather, it showed that the temporary H-2B employees may have become a part of LMS's regular business operation. *Id.*

### ii.     *Petition WAC1621651462*

In Petition WAC1621651462, LMS sought to employ a landscape gardener based upon a peakload need. *Id.* at 282-86. USCIS issued a RFE to LMS.

### iii.     *Petition WAC1621651745*

In Petition WAC1621651462, LMS sought to employ 19 mechanics based upon a peakload need. *Id.* at 287-91. USCIS issued a RFE to LMS.

### iv.     *Petition WAC1621651276*

In Petition WAC1621651276, LMS sought to employ 18 landscape gardeners based upon a peakload need. *Id.* at 292-95. USCIS issued a RFE to LMS.

### v.     *Petition WAC1621651022*

In Petition WAC1621651022, LMS sought to employ four landscape gardeners based upon a peakload need from August 1, 2016, to March 4, 2017. *Id.* at 296-300. USCIS issued a RFE to LMS.

### g.     Petition by Marianas Linen Supply, Inc.

Plaintiff Marianas Linen Supply Inc. ("Marianas Linen") has included one H-2B petition in this action, which is attached as Exhibit 11 to the FAC. *See* ECF No. 23-16. In Petition WAC1619451204, Marianas Linen sought to employ two Laundry Maintenance Technicians based upon a peakload need. *Id.* at 302. USCIS issued a RFE to Plaintiff.

### h.     Petitions by Phil-Gets (Guam) International Trading Corporation

Plaintiff Phil Gets (Guam) International Trading Corporation dba J&B Modern Tech has included three H-2B Petitions in this action, which are attached as Exhibit 12 to the FAC. *See* ECF No. 23-17. All of its petitions have RFE requests.

i.      *Petition WAC1602251487*

In Petition WAC1602251487, J&B Modern Tech sought to extend the employment of a reinforcing metal worker until the end of his maximum three-year stay as an H-2B employee from November 1, 2015, to March 8, 2016, under a peakload with an unpredictable temporary need.  *Id.* at 306-309.  USCIS submitted a RFE to J&B Modern Tech.  In issuing the RFE, USCIS noted that the petition was J&B Modern Tech's fourth filing and third extension request on behalf of the beneficiary.  *Id.* at 308.  Based upon the prior filings, USCIS questioned whether the current filing was justified as peakload with an unpredictable temporary need.  *Id.*  USCIS also questioned whether the need for the temporary employee will end in the near, definable future or whether the temporary employee has become a part of Plaintiff's regular business operation.   *Id.*

ii.      *Petition WAC1602251531*

In Petition WAC1602251531, J&B Modern Tech sought to extend the employment of a sheet metal worker until the end of his maximum three-year stay as an H-2B employee from November 1, 2015, to March 8, 2016, under a peakload with an unpredictable temporary need. USCIS issued a RFE to J&B Modern Tech.  In its RFE, USCIS informed J&B Modern Tech that "the record was insufficient evidence to establish . . . temporary need." *Id.* at 311.  USCIS further informed J&B Modern Tech that the petition failed to show that J&B Modern Tech's need for the H-2B worker will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)).  *Id.* at 312. The RFE also advised J&B Modern Tech that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of J&B Modern Tech's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3)).  *Id.* at 311-12.

iii.      *Petition WAC1602251450*

In Petition WAC1602251450, J&B Modern Tech sought to extend the employment of a plumber until the end of his maximum three-year stay as an H-2B employee from November 1, 2015, to March 8, 2016, under a peakload with an unpredictable temporary need.  *Id.* at 314-17.  The RFE generally cited the same information contained in the RFE for Petition WAC1602251531 (the sheet

metal worker petition referenced in the preceding paragraph).

i.    Petition of Zenaida M. Zantua dba New Fresh Bread Bakeshop

Plaintiff Zenaida M. Zantua dba New Fresh Bread Bakeshop ("Fresh Bread") included one H-2B Petition in this action, which is included as Exhibit 13 to the FAC. *See* ECF No. 23-18.

With regard to Petition WAC1608250355, USCIS advised Fresh Bread that its petition had been denied for the reasons stated in the attachment of its July 14, 2016 letter. *Id.* at 316. The petition "request[ed] the H-2B visa continuation of the previously approved employment for two (2) beneficiaries" and that Fresh Bread desired to extend their H-2B classification for a year, from February 1, 2016, to January 31, 2017, in order for them to continue to work as Bakers under a peakload with an unpredictable temporary need. *Id.* at 320.

USCIS stated that Fresh Bread did not provide "sufficient evidence to establish . . . temporary need." *Id.* In addition, it informed Fresh Bread that the petition failed to show that Fresh Bread's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). The letter also advised Fresh Bread that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of Fresh Bread's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3)). In denying the application, USCIS advised Fresh Bread that it considered all the documents submitted in the original filing and the RFE.

j.    Petitions by 5M Construction Corporation

Plaintiff 5M Construction Corporation ("5M") has included herein four H-2B petitions which were denied by USCIS and the results of the motions to reconsider the denials of the said four petitions. The four petitions and the results of the motions to reconsider are included in Exhibit 14 to the FAC. *See* ECF No. 23-19.

i.    *Petition WAC1525850832*

With regard to Petition WAC1525850832, USCIS advised 5M that its petition had been denied for the reasons stated in the attachment of its February 12, 2016 letter. *Id.* at 331. In the

petition, 5M requested the H-2B visa continuation of the previously approved employment of six carpenters for a period of one year, from October 1, 2015, to September 30, 2016, under a peakload need. *Id.* at 333.

USCIS stated that 5M had not "sufficiently established a H-2B temporary need for the services of the beneficiaries upon the basis claimed in the petition." *Id.* In addition, it informed 5M that the petition failed to show that 5M's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). The letter also advised 5M that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of 5M's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3)). In denying the application, USCIS advised 5M that it considered all the documents submitted in the original filing and the RFE received on January 25, 2016. *Id.* at 334.

With regard to the denial of said petition, 5M filed a Motion to Reopen or Reconsider with USCIS, which is discussed in the following paragraph.

ii.    *Petition WAC1690360734*

With regard to Petition WAC1690360734, USCIS denied the Motion to Reopen or Reconsider its decision with regard to Petition WAC1525850832 (see petition referenced in the preceding section) generally on the ground that 5M did not provide new facts through affidavits or other documentary evidence to justify reopening the proceeding, and 5M did not state a clear reason nor did it provide any precedent decision to establish that the denial was based on an incorrect application of the law or policy so as to warrant reconsideration of the prior decision. *Id.* at 328-30.

iii.    *Petition WAC1525851401*

With regard to Petition WAC1525851401, USCIS advised 5M that its petition had been denied for the reasons stated in the attachment of its February 12, 2016 letter. *Id.* at 339. In the petition, 5M requested the H-2B visa continuation of the previously approved employment of six beneficiaries for a period of one year, from October 1, 2015, to September 30, 2016, in order for them to continue to work as cement masons under a peakload need. *Id.* at 341.

USCIS stated that 5M had not "sufficiently established a H-2B temporary need for the services of the beneficiaries upon the basis claimed in the petition." *Id.* In addition, it informed 5M that the petition failed to show that 5M's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). The letter also advised 5M that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of 5M's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3)). In denying the application, USCIS advised 5M that it considered all the documents submitted in the original filing and the RFE received on January 25, 2016. *Id.* at 342.

With regard to the denial of the this petition, 5M filed a Motion to Reopen or Reconsider with USCIS, which is discussed in the following paragraph.

iv.     *Petition WAC1690360732*

With regard to Petition WAC1690360732, USCIS denied the Motion to Reopen or Reconsider its decision with regard to Petition WAC1525851401 (see petition referenced in the preceding section) generally on the ground that 5M did not provide new facts through affidavits or other documentary evidence to justify reopening the proceeding, and 5M did not state a clear reason nor did it provide any precedent decision to establish that the denial was based on an incorrect application of the law or policy so as to warrant reconsideration of the prior decision. *Id.* at 336-38.

v.     *Petition WAC1525851106*

With regard to Petition WAC1525851106, USCIS advised 5M that its petition had been denied for the reasons stated in the attachment of its February 12, 2016 letter. *Id.* at 347. In the petition, 5M requested the H-2B visa continuation of the previously approved employment of 35 carpenters for a period of one year, from October 1, 2015 to September 30, 2016, under a peakload need. *Id.* at 349.

Similar to other 5M petitions it had denied, USCIS stated that 5M had not "sufficiently established a H-2B temporary need for the services of the beneficiaries upon the basis claimed in the petition." *Id.* In addition, it informed 5M that the petition failed to show that 5M's need for the

H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). The letter also advised 5M that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary additions to staff will not become a part of 5M's regular operation (citing 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3)). In denying the application, USCIS advised 5M that it considered all the documents submitted in the original filing and the RFE received on January 25, 2016. *Id.* at 350.

With regard to the denial of the this petition, 5M filed a Motion to Reopen or Reconsider with USCIS, which is discussed in the following paragraph.

vi.      *Petition WAC1690360730*

With regard to Petition WAC1690360730, USCIS denied the Motion to Reopen or Reconsider its decision with regard to Petition WAC1525851106 (see petition referenced in the preceding section) generally on the ground that 5M did not provide new facts through affidavits or other documentary evidence to justify reopening the proceeding, and 5M did not state a clear reason nor did it provide any precedent decision to establish that the denial was based on an incorrect application of the law or policy so as to warrant reconsideration of the prior decision. *Id.* at 344-46.

vii.      *Petition WAC1525850412*

With regard to Petition WAC1525850412, USCIS advised 5M that its Petition had been denied for the reasons stated in the attachment of its February 12, 2016 letter. *Id.* at 355. In the petition, 5M sought one year H-2B extensions for 38 previously approved cement masons, from October 1, 2015, to September 30, 2016, under a peakload need. *Id.* at 357.

Consistent with other letters, USCIS USCIS stated that 5M had not "sufficiently established a H-2B temporary need for the services of the beneficiaries upon the basis claimed in the petition." *Id.* In addition, it informed 5M that the petition failed to show that 5M's need for the H-2B workers will end in the near, definable future (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)). The letter also advised 5M that it failed to show that it regularly employed permanent workers to perform the services or labor at the place of employment and that it needed to supplement its permanent staff at the place of employment on a temporary basis due to seasonal or short term demand and that the temporary

additions to staff will not become a part of 5M's regular operation (citing 8 C.F.R. § 214.2(h)(6)(ii)(B)(3)). In denying the application, USCIS advised 5M that it considered all the documents submitted in the original filing and the RFE received on January 25, 2016. *Id.* at 358.

With regard to the denial of the this petition, 5M filed a Motion to Reopen or Reconsider with USCIS, which is discussed in the following paragraph.

                    viii.    *Petition WAC1690360728*

Again, consistent with its other decisions, USCIS denied Petition WAC1690360728, the Motion to Reopen or Reconsider its decision with regard to Petition WAC1525851106 (see petition referenced in the preceding section) generally on the ground that 5M did not provide new facts through affidavits or other documentary evidence to justify reopening the proceeding, and 5M did not state a clear reason nor did it provide any precedent decision to establish that the denial was based on an incorrect application of the law or policy so as to warrant reconsideration of the prior decision. *Id.* at 352-54.

          k.    Summary of Exhibits

In reviewing the Plaintiffs' exhibits to the FAC, the court notes that eight Plaintiffs have included 46 petitions in their exhibits to the FAC which have either been denied by USCIS or have RFEs which were pending. The court also notes that most of the petitions included in the exhibits relate to the construction industry. None of the petitions included as exhibits were approved by USCIS.

The petitions reviewed by the court sought the temporary employment or extension of employment of these worker positions:

- •    87  Cement Masons
- •    86  Carpenters
- •    29  Landscapers
- •    22  Reinforcing Metal Workers
- •    19  Mechanics
- •    15  Electricians
- •    8   Structural Steel Workers
- •    7   Heavy Equipment Operators/Mechanics
- •    5   A/C & Refrigeration Mechanics
- •    4   Radiologic Technologists
- •    4   Plumbers
- •    3   Camp Cooks
- •    2   Bakers

- • 2 Laundry Maintenance Technicians
- • 1 Tower Crane Operator
- • 1 Plasterer
- • 1 Sheet Metal Worker

### l.    The Arbitrary or Capricious Standard

The issue before the court under the APA is whether the denials by USCIS of Plaintiffs' petitions (those attached as the exhibits to the FAC) to extend or employ H-2B workers arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

As the court has stated above, a reviewing court must uphold USCIS's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Under the said standard, the court must sustain USCIS's decisions in the above-referenced petitions if it "has articulated a rational connection between the facts found and the conclusions made. . . .  The arbitrary or capricious standard is a deferential standard of review under which the agency's action carries a presumption of regularity." *San Luis & Delta-Mendoza Water Authority v. Locke,* 776 F.3d 971, 994 (9th Cir. 2014) (internal quotations and citation omitted).

The deference given to agency action is not unlimited.  The reviewing court must review the decision with such detail to ensure that the agency has not

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

See *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

In all of the decisions by USCIS, the agency has premised its discussion by citing the applicable regulations.  It has pointed out that an H-2B visa application must be for a "nonagricultural temporary worker who is coming temporarily to the United States to perform temporary services or labor[.]"  8 C.F.R. § 214.2(h)(6)(i)(A).  With regard to that temporary need, USCIS has always emphasized that Plaintiffs must show that their needs for the H-2B workers "will end in the near, definable future."  8 C.F.R. § 214.2(h)(6) (ii)(B).  "Generally, that period of need is one year or less, but in the case of a one-time event the need could last up to [three] years."  *Id.* Thus, under the above regulation, one-time occurrence, seasonal, peakload, and intermittent needs

1  are temporary needs that generally are for one year periods or less. *Id.* Defendant USCIS has been

2  consistent in emphasizing the requirements of the regulations in its decisions denying Plaintiffs'

3  petitions or in seeking RFEs.

4       In all of the petitions submitted to USCIS, Plaintiffs have categorized their application for

5  temporary employment as a need based upon a peakload need or a one-time occurrence need.

6       When a plaintiff submitted a peakload need petition, USCIS always informed the plaintiff

7  when it denied the petition that it failed to show that it regularly employed permanent workers to

8  perform the services or labor at the place of employment and that it needed to supplement its

9  permanent staff at the place of employment on a temporary basis due to seasonal or short term

10  demand and that the temporary additions to staff will not become a part of plaintiff's regular

11  operation. 8 C.F.R. § 214.2 (h)(6)(ii)(B)(3). USCIS also provided reasons for the determination.

12       When a plaintiff submitted a one-time occurrence need petition, USCIS always informed the

13  plaintiff when it denied the petition that it failed to establish that it had not employed workers to

14  perform the services or labor in the past and that it will not need workers to perform the services or

15  labor in the future or that it has an employment situation that is permanent but a temporary event of

16  a short duration has created the need for a temporary worker. 8 C.F.R. § 214.2 (h)(6)(ii)(B)(1).

17  USCIS again provided reasons for its determination.

18       The court notes that the Plaintiffs' construction industry's needs for H-2B workers present a

19  dilemma in relation to the H-2B temporary employment program. Exhibit 1 to the FAC is a GDOL

20  briefing summary for the Guam Chamber of Commerce relative to the increase in the denial rates

21  of H-2B visas. Therein, GDOL states:

22       Utilization of supplementary foreign workers, via the H-2B program, is an unfortunate
         reality for Guam construction activities. Current U.S. resident construction worker
23       capacity is insufficient to fill the vacuum should existing foreign workers leave. . . .
         . . .
24       The lack of skilled workers in the common construction trades on Guam is real and
         cannot be fixed by importing US workers. History has proven this fact. Since the end
25       of World War II, very few large facilities have been built without supplementation by
         foreign workers.

26

27  Ex. 1 at 2-3, ECF No. 23-1.

28       As the court has pointed out above, USCIS has always prefaced its decisions by emphasizing

that every H-2B petition seeking temporary employment must establish that the need for the employee "will end in the near, definable future." Many of the Plaintiffs' petitions state a need based upon a peakload with an unpredictable temporary need. An unpredictable temporary need does not harmonize with the regulation that requires termination of the temporary employment in the near, definable future.

The Plaintiffs try to establish the temporary need (for example of 27 cement workers, 17 carpenters, or 12 reinforcing metal workers) by providing existing contracts with several entities which show the need for said workers to complete the contracts. USCIS has generally responded to existence of these contracts by pointing out that the petitions generally are seeking extensions of the visas of the beneficiaries and that the Plaintiffs being in the construction business would always have a need for the petitioned workers. Thus, USCIS seems to suggest that these workers have become a part of the Plaintiffs' businesses since the Plaintiffs will always have the need for these services in relation to its construction businesses.

Thus, USCIS seems to have concluded that Plaintiff BME will always need reinforcing metal workers, electricians, A/C refrigeration mechanics, etc. for its construction business as it continuously needs construction contracts for purposes of its business. Similarly, IBC will always need structural steel workers, carpenters, cement masons, etc. for its construction business as it continuously needs construction contracts for purposes of its business. Plaintiff 5M will always need carpenters and cement masons for its construction business as it continuously needs construction contracts for purposes of its business.

The H-2B program, however, envisions a temporary worker who is coming to Guam to perform temporary services or labor. The worker is not to displace qualified U.S. workers or affect the wages and working conditions of U.S. workers. 8 C.F.R. § 214.2 (h)(6)(i)(A).

Temporary services or labor under the H-2B classification refers to any job in which the petitioner's (Plaintiffs herein) need for the duties to be performed by the H-2B employee is temporary "whether or not the underlying job can be described as permanent or temporary." 8 C.F.R. § 214.2 (h)(6)(ii)(A).

Employment is of a temporary nature when the employer (Plaintiffs herein) needs the worker

for a limited period of time.  *"The employer must establish that the need for the employee will end in the near, definable future."*  8 C.F.R. § 214.2 (h)(6)(ii)(B) (emphasis added).

The Plaintiffs argue that USCIS's denials of its H-2B Petitions must be arbitrary and capricious since the agency has not approved any of the 46 petitions reviewed by the court although it had approved almost 100% of prior year petitions.  The court does consider quite a disparity in figures to be alarming.  However, in order to find that USCIS's denials of the Plaintiffs' petitions were arbitrary and capricious, the court must confine itself to the standards provided for its review.  The court cannot and should not be persuaded based upon the mere disparity in the numbers.

The Plaintiffs further argue that GDOL, based upon the issuance of its temporary labor certification, has already determined that the Plaintiffs' temporary needs are indeed peakload or one-time occurrence needs and that USCIS cannot determine otherwise.

The court finds that the Plaintiffs misplace reliance on that part of the regulation which requires the Plaintiffs to apply for a temporary labor certification with the Governor of Guam.  The pertinent regulation provides only that the Governor's temporary certification shall be advice to the director that (1) qualified workers are not available in Guam to perform the temporary services or labor and (2) the employment of the H-2B worker will not affect the wages and working conditions of similarly employed U.S. workers.  Moreover, another regulation provides that such temporary labor certifications are subject to the review of the USCIS.  Thus, USCIS retains sole responsibility to determine whether Plaintiffs have met the temporary needs requirement of the H-2B program.

In reviewing the various petitions and the decisions by USCIS therein, the court finds that USCIS has generally articulated a rational connection between the facts before it and the applicable regulations governing the agency in relation to its conclusions.  Whether the temporary need was for a baker, a laundry maintenance technician, a radiologic technologist, or construction worker, USCIS has always adhered to the principle that the employment which was sought should be temporary and one that will end in the near, definable future.  USCIS has concluded that in many of these petitions, the Plaintiffs have failed to meet and establish this basic requirement of the regulation.

On the other hand, the Plaintiffs argue that their temporary needs may be recurring and that USCIS must take into consideration recurring temporary needs and that such recurring needs are

envisioned and allowed under the applicable regulations.  The regulations do recognize a recurring peakload need.  However, USCIS appears to conclude that the Plaintiffs' recurring peakload needs which require temporary workers to continuously work for the same employer for one to three year periods may not be in harmony with the regulation requirement that the employment will end in the near, definable future.  A peakload need requires supplementation of an employer's staff on a temporary basis due to a seasonal or short term demand.  Such a conclusion by USCIS does not appear to be so implausible that it could not be ascribed to a difference in viewpoint.

Furthermore, the reality of Guam's constructions needs show that USCIS's decisions that the Plaintiffs failed to show a temporary need is not arbitrary or capricious.  GDOL has stated that the use of the H-2B program is an unfortunate reality for Guam because Guam has lacked skilled construction workers since the end of World War II.

Thus, a denial by USCIS of a petition to employ an H-2B construction worker because a plaintiff has failed to establish that the employment will end in the near, definable future cannot be said to be arbitrary or capricious because it is reasonable to conclude that Guam's needs for such a worker is not temporary.  The findings by GDOL suggest that it is a permanent need.

Accordingly, in applying a deferential standard of review to USCIS's decisions in relation to all the petitions at issue herein, the court is not able to conclude that said decisions were arbitrary, capricious, or in contradiction of the law.  Thus, the court cannot conclude that the Plaintiffs will prevail on the merits of the case.

When a plaintiff fails to show a likelihood of success on the merits, the court need not consider the remaining three *Winter* factors.  *Ass'n des Eleveurs de Canards ef d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *DISH Network Corp. V. F.C.C.*, 653 F.3d 771, 776-77 (9th Cir. 2011)).  Although the court has found that the Plaintiffs have not satisfied this threshold requirement, the court will nonetheless analyze the remaining three factors.

## 2.    Irreparable Harm in the Absence of Preliminary Relief

Next, the court considers whether the Plaintiffs will suffer irreparable harm if the court denies preliminary relief.

The Plaintiffs first assert that since the APA specifically authorizes injunctive relief, the

1  Plaintiffs are not required to establish they will suffer irreparable harm. *See* Mot. Prelim. Inj. at 14,

2  ECF No. 8. To support said proposition, the Plaintiffs cite to *United States v. Odessa Union*

3  *Warehouse Co-op,* 833 F.2d 172, 175 (9th Cir. 1987). In *Odessa*, the United States brought an

4  action to enjoin the sale and movement of wheat by the defendant, alleging that inspections revealed

5  the defendants were violating the Food, Drug, and Cosmetic Act. *Id.* at 173-174. The United States

6  sought a preliminary injunction to stop the sale of wheat until the defendant complied with FDCA

7  standards. *Id.* at 174. The district court denied the motion for preliminary injunction, and the

8  government appealed. *Id.* In determining what standard to apply, the Ninth Circuit stated:

> The function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants. This is not to say that the violation of a federal statute automatically requires a district court to issue an injunction. The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case. However, *the fact that a federal statute is being enforced by the agency charged with that duty may alter the burden of proof of a particular element necessary to obtain injunctive relief.* Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the courts to enforce them when asked.

15  *Id.* at 174-75 (emphasis added) (internal citations omitted).

16      Here, the party seeking the preliminary injunction is not the agency charged with enforcing

17  a federal statute. Instead, the Plaintiffs – private litigants – are requesting that the court issue a

18  preliminary injunction. Thus, the court does not believe the *Odessa* case is applicable to the facts

19  before it, and the court will require the Plaintiffs to demonstrate they will suffer irreparable harm as

20  required by *Winter*.

21      The Plaintiffs assert they each face irreparable harm based on the denial of the H-2B petitions.

22  They conceded that "[m]ost of the harms are economic in nature, but cannot be resolved by monetary

23  damages." Mot. Prelim. Inj. at 16, ECF No. 8. The Plaintiffs argue that if an injunction is not

24  issued, they may default on existing contracts and forego bidding on future contracts, face the

25  imposition of liquidated damages and may be forced to cease operations or file for bankruptcy. *Id.*

26  In addition to any injury the Plaintiffs themselves claim they will and have suffered, the Plaintiffs

27  also allege that the denials by USCIS will impact the military and local and federal governments

28  through the loss of tax revenue. *Id.* The Plaintiffs' motion sets forth the specific injury each plaintiff

1  faces because of the USCIS's decision to deny the H-2B petitions. *Id.* at 16-21.

2       The Defendants argue that the Plaintiffs have not established that they face "real, immediate,
3  and irreparable injury that will occur pending this [c]ourt's review of their claims." Opp'n at 22,
4  ECF No. 13. The Defendants point out that the Plaintiffs "fail to provide a sufficient explanation
5  why, given that they waited over a year in some cases before filing this suit, that they cannot now
6  wait for the [c]ourt to evaluate the merits of their claims in motions to dismiss or through cross-
7  briefing for summary judgment[.]" *Id.* at 23. The Defendants contend that "[a]ny harm plaintiffs
8  have [sustained] or will in the future allegedly sustain[] as a result of previous denials cannot support
9  a mandatory injunction ordering USCIS to reopen and approve previously denied petitions"
10 particularly when "the period of need may have already passed, and where petitioners have not
11 established that they meet the well-established requirements for the H-2B program." *Id.*

12      In response, the Plaintiffs assert that the petitions at issue here are less than a year old, having
13 been denied in 2016. *See* Reply Br. at 14, ECF No. 16. The Plaintiffs state that their "temporary
14 need for the workers is immediate and continuing, . . . and they are currently facing . . . immediate,
15 irreparable harm." *Id.* The Plaintiff further note that "[a]dequate compensatory or other corrective
16 relief is unavailable" to them since the "harms they will suffer cannot be resolved with monetary
17 damages." *Id.*

18      With regard to this second *Winter* factor, the Supreme Court stated its standard "requires
19 plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of
20 an injunction." *Winters*, 555 U.S. at 22 (emphasis in original). "[A] preliminary injunction will not
21 be issued simply to prevent the possibility of some remote future injury." *Id.* Furthermore, it is well
22 established that mere economic injury does not constitute irreparable harm. *See Sampson v. Murray*,
23 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not
24 usually constitute irreparable injury. . . . Mere injuries, however substantial, in terms of money,
25 time and energy necessarily expended . . . are not enough. The possibility that adequate
26 compensatory or other corrective relief will be available at a later date, in the ordinary course of
27 litigation, weighs heavily against a claim of irreparable harm.") (internal citations omitted); *Rent-A-*
28 *Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991)

("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.").

Here, while the court finds that the primary harm the Plaintiffs will suffer are economic in nature, the court also notes that even if the Plaintiffs were to prevail on the merits, they are not entitled to compensation through monetary damages. The only relief afforded to the Plaintiffs under the APA are (1) the court may compel agency action that has been unlawfully withheld or unreasonably delayed, or (2) the court may hold unlawful and set aside agency action, findings or conclusions that fail to conform with any of six specified standards. 5 U.S.C. § 706. Thus, analyzing the Plaintiffs' injuries under a purely economic analysis is not sufficient.

Despite the Defendants' arguments to the contrary, the court finds that some Plaintiffs have demonstrated that irreparable injury is likely for some of them if an injunction is not issued. For example, Ace Builders has over $100 million in contracts, 75% of which are with the military. FAC at ¶32, ECF No. 23. The company has been a successful user of the H-2B visa program since 2008, and had enjoyed a 100% approval rate on its petitions up until 2016. *Id.* In 2015 and 2016, Ace Builders had 21 H-2B petitions, 20 of which were denied. *Id.* at ¶33. Many of its contracts require welders, and despite having to comply with heightened advertising requirements for the military contracts, Ace Builders asserts it has been unable to find the necessary domestic workers to complete the projects. Mot. Prelim Inj. at 17, ECF No. 8. Just one of Ace Builders' military contracts has a liquidated damages clause of $56,000 per day if a project is not completed as scheduled. *Id.* Although Ace Builders contends that its existing work force is working additional hours to timely complete its projects, the shortage of workers raises safety and injury concerns for the company.

Plaintiff GRC has also shown that it will likely suffer irreparable harm in the absence of preliminary relief. GRC is a medical service provider and asserts it is "the only provider on island of cutting edge digital mammograms and nuclear medicine. These are advanced methods of scanning for cancer and this technology is not available anywhere else in Micronesia, Palau or Saipan." Mot. Prelim Inj. at 18, ECF No. 8. GRC performs about 15-20 ultrasounds a day, and

///

///

although GRC currently employs a nuclear tech that is a U.S. worker,[16] GRC asserts the work is beyond the capacity of one worker. *Id.* GRC asserts there is no training program for this technology on island and, thus, foreign workers are needed to perform the work. *Id.* at 18-19. GRC states that it has used the H-2B program since 2007 and sponsors between two to five highly skilled radiologic technologists each year. FAC at ¶39, ECF No. 23. In 2015, all of GRC's H-2B petitions were approved. *Id.* at ¶40. In 2016, however, two of four H-2B petitions were denied, one is at the RFE stage, and the other was withdrawn after a RFE was issued. *Id.* Because of the denials of its petitions, GRC has had to schedule patients' scans three weeks in advance, unless there is an emergency. Mot. Prelim Inj. at 19, ECF No. 8. GRC states that without the highly-skilled H-2B workers, patients are placed in a life or death situation, and other patients are also being transferred to Hawaii in order to get the necessary scans and treatment. *Id.*

While the court has set forth a couple examples of Plaintiffs who will likely suffer irreparable injury, other Plaintiffs have not met their burden on this issue. For instance, GTDS states that it caters to a largely Asian clientele and relies on Japanese-speaking scuba dive instructors because a majority of Guam's tourists come from Japan. FAC at ¶36, ECF No. 23. GTDS claims it requires its scuba instructors to be "completely bilingual in English and Japanese," Mot. Prelim Inj. at 18, ECF No. 8, in order to "fully communicate with the Japanese clientele regarding the fundamental of scuba diving, proper use of the equipment, various safety requirements, current ocean conditions and other potentially life-saving information." FAC at ¶36, ECF No. 23. In 2015, one of GTD's H-2B petitions was approved. *Id.* at ¶37. In 2016, GTDS filed two petitions in the peakload category; one was denied and the other was withdrawn by GTDS after USCIS issued a RFE. *Id.* at ¶¶37-38. GTDS contends that if it is unable to hire fully bilingual certified scuba instructors from Japan, it will face irreparable harm because the safety of its customers will be compromised and the company will not be able to serve a large portion of its clientele. Mot. Prelim Inj. at 18, ECF No. 8. The court finds that GTDS will not suffer irreparable injury because it has the option of implementing

---

[16] GRC states that it took four years to find this worker. Mot. Prelim Inj. at 18, ECF No. 8. GRC also claims it pays twice what a similarly situated worker would earn in the continental United States. *Id.*

other corrective relief, such as by providing Japanese language instruction to its non-Japanese speaking scuba instructors.

Additionally, some Plaintiffs have failed to show irreparable injury is likely to occur and have only alleged speculative harm in the future. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1988) (internal citation omitted). For example, Plaintiff BME asserts it is " unable to bid on future work," and J&B Modern Tech claims it "may not be able to bid on some future contracts without H-2B skilled workers to supplement its U.S. workforce." Mot. Prelim Inj. at 18 and 20, ECF No. 8. Unlike Ace Builders who asserts its existing contracts are affected and jeopardized, the statements of BME and J&B Modern Tech describe harm that is speculative and not immediate; they allege harm that may (or may not) happen some time in the future with regard to work or contracts that may not even come into being. Absent evidence of imminent injury, some Plaintiffs' claims have neither satisfied the baseline *Winter* standard nor the heightened standard the court must apply with regard to mandatory injunctions.

With regard to the second *Winter* factor, the court finds that only some Plaintiffs have met their burden of demonstrating that irreparable injury is likely if a preliminary injunction is not issued.

### 3. Balance of Equities and Public Interest

Finally, the Plaintiffs assert that the balance of equities and the public interest weigh in their favor. The Plaintiffs assert that the threatened injury they will suffer in terms of being forced to cease operations, defaulting on existing contracts and facing liquidated damages in addition to having to lay off U.S. workers, would not also affect the Plaintiffs but would also impact Guam's economy and the tax revenues for both the Guam and the federal governments. Mot. Prelim Inj. at 22, ECF No. 8. In contrast, the Plaintiffs argue that the Defendants would not suffer any harm if the court issued a preliminary injunction because the Defendants have consistently approved "the same applications, based on the same law and the same set of operative facts for the past 30 years." *Id.* at 22-23. The Plaintiffs further contend that the Defendants would benefit from the injunction

1  rather than be harmed by it because approval of the H-2B petitions would allow the Plaintiffs to

2  complete strategic ongoing military projects on Guam and thus contribute to the U.S. economy. *Id.*

3  at 22. The Plaintiffs further claim that approval of the pending H-2B petitions would "discourage[]

4  illegal immigration, as it rewards an employer who is playing by the rules in industries that often rely

5  on undocumented labor." *Id.*

6        The Defendants, on the other hand, assert that requiring the USCIS to approve petitions that

7  were previously denied "would flout compelling governmental and public interests." Opp'n at 24,

8  ECF No. 13. The Defendants argue that they will be irreparably injured if this court were to enjoin

9  the Defendants from administering the very statutes it is charged with enforcing. *Id.* at 23 (citing

10  *New Motor Vehicle Bd. of California v. Orrin W. Fox Co*, 434 U.S. 1345, 1351 (1977) ("any time

11  a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it

12  suffers a form of irreparable injury")). The Defendants also cite to *INS v. Nat'l Ctr. for Immigrants'*

13  *Rights, Inc.*, where the Supreme Court recognized that, "a primary purpose in restricting immigration

14  is to preserve jobs for American workers." 502 U.S. 183, 194 (1991) (quoting *Sure-Tan Inc. v.*

15  *NLRB*, 467 U.S. 883, 893 (1984)). The Defendants contend that DHS's authority to issue H-2B visas

16  is limited to those situations where "unemployed persons capable of performing such service or labor

17  cannot be found in this country," 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and further argue that Congress'

18  intent in enacting this limitation was to balance the needs of U.S. employers against protections for

19  the U.S. workforce. Opp'n at 25, ECF No. 13. The Defendants assert that the relief sought by the

20  Plaintiffs, specifically the opening and blanket approval of H-2B petitions and extensions of

21  temporary labor certificates, would require USCIS to act contrary to important governmental and

22  public interests, such as protecting U.S. workers. *Id.*

23        The Plaintiffs maintain that a preliminary injunction is not contrary to public interest because

24  approval of the H-2B petitions will "benefit the economy of Guam and the strategic importance for

25  military contracts." Reply at 15, ECF No. 16. The Plaintiffs assert that the injunction they seek will

26  allow the Plaintiffs to remain in business and will encourage them to continue employ workers who

27  contribute to the economy. *Id.* at 16.

28        There are several competing public and governmental interests at stake here. The court

acknowledges the importance of Congress' intent to protect the U.S. workforce by limiting H-2B visas to those instances where "unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(1)(H)(ii)(b). Congress also empowered the Secretary of Homeland Security to implement the complex regime of immigration laws uniformly throughout the entire country, and the Supreme Court has recognized that an impairment of such authority could constitute a form of irreparable injury.

Congress manifested its intent to protect the U.S. workforce by imposing a statutory cap on the total number of foreign nations who may be issued an H-2B visa in any given year.[17] Guam, however, is exempt from this cap until December 31, 2019.[18] This exemption was granted to Guam because the island would need a sufficient number of workers to prepare for the transfer of thousands of members of the U.S. Marine Corps from Okinawa to Guam. The court notes that ensuring that the island's military build-up is not delayed is an important public interest, not only for Guam but for the U.S. military as well. The planned Marine relocation can not occur until the appropriate facilities are constructed on island, and the Plaintiffs have alleged that related construction projects may be seriously impacted by the recent denials of the H-2B petitions.

Another public interest at stake is the effect a delay in the military build-up or a shut down of businesses will have on Guam's economy. The court concurs that the denials of the H-2B petitions has negatively impacted Guam's economy. GRC has noted that some of its patients have had to transfer to Hawaii to get the necessary scans and treatment since USCIS has denied its H-2B

---

[17] The INA limited the annual number of H-2B visa issuances to 66,000. *See* 8 U.S.C. § 1184(g)(1)(B). On May 5, 2017, President Trump signed the Consolidated Appropriations Act, and Section 543 of said act permitted the Secretary of Homeland Security, under certain circumstances and after consultation with the Secretary of Labor, to increase the number of H-2B visas available to U.S. employers. Consol. Appropriations Act, 2017, Pub. L. 115-31, 131 Stat. 135. On July 19, 2017, the Departments of Homeland Security and Labor published a final rule increasing the numerical limit on H-2B visas by up to 15,000 additional visas through the end of fiscal year 2017. Increase FY2017 Numerical Limitation for H-2B Program, 82 Fed. Reg. 32,987, 32989 (July 19, 2017).

[18] *See* https://www.uscis.gov/working-united-states/temporary-workers/h-2b-non-agricultural-workers/cap-count-h-2b-nonimmigrants (last visited Aug. 11, 2017).

petitions for radiologic technologists. This loss of business to GRC in turn affects Guam's economy, not to mention the inconvenience felt by GRC's patients who are residents of Guam.

Having considered the parties' arguments, the court finds that the balance of equities and the public interest weighs in the Plaintiffs' favor.

## CONCLUSION

Based on the above analysis, although some Plaintiffs have shown that they are likely to suffer irreparable harm in the absence of a preliminary injunction, and that the balance of equities and the public interest appears to tip in favor of the Plaintiffs, the court finds that the Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims. Because mandatory injunctions are generally disfavored and because the standard of review is highly deferential under the APA, the below-signed judge recommends that the Chief Judge deny the Motion for Preliminary Injunction.

IT IS SO RECOMMENDED.



/s/ **Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Aug 11, 2017**

## <u>NOTICE</u>

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**