**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| GUAM CONTRACTORS ASSOCIATION, *et al*., | CIVIL CASE NO. 16-00075 |
| Plaintiffs-Petitioners, | |
| vs. | **ORDER RE: MOTION TO DISMISS; OBJECTIONS TO REPORT & RECOMMENDATION** |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, *et al*., | |
| Defendants-Respondents. | |

Various Guam businesses ("the employers") have initiated this lawsuit challenging the government's recent administration of its non-agricultural temporary worker program, which allows local businesses to bring foreign workers to Guam to fill a variety of temporary labor roles.    As they await the final result of this proceeding, the employers have sought to preliminarily enjoin the government from administering the program in a way that may substantially deviate from its previous administration and may be responsible for producing the remarkably low approval rate for temporary worker applications observed on Guam in recent years.   The court referred the injunction request to the Magistrate Judge, who recommends that the court deny the motion based on a lack of likelihood the employers can ultimately prevail in the case.   The employers timely objected, contending the Magistrate Judge improperly applied

1

the case law regarding the scope of the explanation required for these agency adjudications and improperly interpreted some of the crucial relevant regulations. While the Magistrate Judge had the injunction question under advisement, the government moved to dismiss the case entirely, contending the court lacks subject matter jurisdiction and the employers have failed to state any cognizable legal claim for which the court may grant relief. The parties have submitted briefing on the dismissal issues, and they have timely filed their responses to the Magistrate Judge's report and recommendation regarding injunction. The court heard argument on the injunction and dismissal motions on December 11, 2017.

The Defendants' motion to dismiss (ECF No. 30) is **GRANTED in part** and **DENIED in part**. The Plaintiffs' motion for preliminary injunction (ECF No. 8) is **GRANTED in part**. The Magistrate Judge's Report and Recommendation (ECF No. 61) is **ADOPTED in part** and **MODIFIED in part** as noted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Magistrate Judge ably sets forth the relevant statutory, regulatory, and factual background in the report and recommendation, and the parties have lodged no objection. This order incorporates the background by reference.

## II.  LEGAL STANDARDS

*A. Motion to Dismiss—Lack of Subject Matter Jurisdiction*. To invoke the court's subject matter-jurisdiction, a party need only set forth "a short and plain statement of the grounds for the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The party must, of course, allege facts and not mere legal conclusions, in accord with the pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Id.* Those cases generally require that a complaint alleges factual matter that, if taken as true, is sufficient to state a claim for "relief plausible on its face." *Iqbal*, 556 U.S. at

678.  Assuming compliance with that standard, the factual allegations are to be taken as true unless challenged by an opposing party.  *Leite*, 749 F.3d at 1121.  The government makes no factual challenge to the allegations here; instead, its facial attack accepts the employers' factual allegations as true and contends that even if true, they cannot establish jurisdiction.  *Id*.  The court's task in resolving the challenge is simply to determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id*.

   *B.  Motion to Dismiss—Failure to State a Claim.*  The task for evaluating a motion to dismiss for failure to state a claim is closely related, as the court must again determine whether the complaint contains factual matter sufficient to state a claim for relief plausible on its face.  *See Iqbal*, 556 U.S. at 678.  The court may determine "a claim has facial plausibility when the plaintiff sets forth factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility, the Supreme Court has explained, is to be distinguished from probability of success—which is not required—and from "sheer possibility" of unlawful conduct—which will not suffice.  *Id*.  Generally, the court takes any factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).  But the court need not accept as true allegations contradicted by judicially noticeable facts, and the court may appropriately look beyond the complaint to matters of public record.  *See, e.g., Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

   *C.  Preliminary Injunction*.  Typically, a party seeking a preliminary injunction must establish a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, the balance of the equities weighs in his or her favor, and the injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  But

preliminary injunctions may take multiple forms, and certain forms may require a heightened showing from the seeking party. Prohibitory injunctions, which prohibit a party from taking action and preserve the status quo pending a final determination of the legal action, generally require only the showing as articulated in *Winter*. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). Mandatory injunctions, by contrast, go "well beyond simply maintain[ing] the status quo" and have often been disfavored; as a result, they have generally required a showing that "extreme or very serious damage will result" in the absence of preliminary relief. *Id.*

## III. DISCUSSION

*Subject Matter Jurisdiction*. The government's basic argument with respect to jurisdiction appears to be based on an objection to the scope of the relief the employers seek. The broad scope, the government suggests, is indicative of a "wholesale" or "programmatic" challenge to the agency's implementation of some program of visa adjudication not yet precisely identified by anyone—which may constitute a kind of challenge previously frowned upon by the Supreme Court. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990). Because the challenge here is fundamentally "programmatic," the government adds, the employers have failed to identify in their complaint any "discrete, final" agency action that might serve as a jurisdiction-conferring foundation for their claims. *Id.* That is particularly true, the government emphasizes, for the various petitions still pending in front of the agency and any petitions not yet submitted—over those petitions, it maintains, the court has no jurisdiction.

This collection of positions presents several problems. First, whether "finality" or any other reviewability provisions in the Administrative Procedure Act ("APA") constitute "jurisdictional" requirements appear to be unsettled questions in the case law. Nothing in the text of the APA suggests any of its reviewability requirements are jurisdictional, and the cases

have observed as much.  *See, e.g., Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) ("The judicial review provisions of the APA are not jurisdictional."); *see also Iowa League of Cities v. E.P.A.,* 711 F.3d 844, 863 n.12 (8th Cir. 2013); *Trudeau v. FTC*, 456 F.3d 178, 183–84 (D.C. Cir. 2006).   Nevertheless, the Ninth Circuit has at times adopted the position that "finality is a jurisdictional requirement to obtaining judicial review under the APA." *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 591 (9th Cir. 2008); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("[F]inality is . . . a jurisdictional requirement.").   But as the Supreme Court has relatively recently explained, "jurisdiction is a word of many, too many, meanings," and courts generally err in treating statutory restrictions on suit as jurisdictional where Congress has declined to explicitly identify the restrictions as jurisdictional. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).   The courts acknowledging and examining those principles from *Arbaugh* have thus generally concluded that APA claims carry no jurisdictional requirement of finality or ultimate reviewability; instead, APA claims simply invoke the court's jurisdiction by way of posing a federal question, as envisioned by 28 U.S.C. § 1331.  *See, e.g., Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010) (noting court had repeatedly held prior to 2005 that the "APA's reviewability provisions were jurisdictional," but that the contrary view is "firmly established" in light of developing Supreme Court case law on the meaning of "jurisdictional"); *accord Pakootas v. Teck Cominco Metals*, Ltd., 646 F.3d 1214, 1220 (9th Cir. 2011) (highlighting Supreme Court's recent focus on "whether the word 'jurisdiction'" is "used in a sentence controlling the claim at issue").

Here, the employers present various claims arising under the APA and regardless whether they have adequately stated those claims, by raising them they have adequately invoked the court's federal question jurisdiction—as various courts have recognized.  *See, e.g., Haines v.*

*Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 (6th Cir. 2016) ("[T]he district court had subject matter jurisdiction over [claimant's] APA claim under the federal question statute."); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006); *see also Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999) ("In the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction."); *accord Rd. Sprinkler Fitters Local Union 669 v. Herman*, 234 F.3d 1316, 1319 (D.C. Cir. 2000) ("28 U.S.C. § 1331 . . . gives federal courts what the APA does not: jurisdiction of all civil actions arising under the . . . laws . . . of the United States." (internal quotation marks omitted)).  On this rationale alone, the government's motion to dismiss fails.

Even if, however, some reviewability provision might serve as a jurisdictional requirement, the employers somewhat incredulously and appropriately point out that they have adequately identified discrete, and final, agency actions here, distinguishing this case from the various cases rejecting more amorphous challenges.  They have, in other words, identified for each named plaintiff the specific petitions (and the total number) giving rise to objections, the years in which the petitions were brought, and the status, if any, of any pending appeal or request for additional evidence from the agency.  *See, e.g.,* ECF No. 23 at 6–12; *id*. at 18 n.20.  And for purposes of any "discrete" or "final" "agency action" requirement, the government has no serious quarrel that those identifications are insufficient.  The government implicitly concedes as much at note 7 of its motion to dismiss and explicitly concedes as much elsewhere, emphasizing that the adjudications identified by the employers here are appropriately described as "agency process[es] for the formulation of an order" under the APA, and the resulting orders are appropriately characterized as "the whole or a part of a final disposition" under the APA.  *See* ECF No. 31 at 27 n.7; *see also* ECF No. 50 at 1 ("This is a textbook [APA] challenge to final

agency actions[.]").  The APA's language appears to confirm reviewability here in similarly explicit terms, providing in at least one location that "agency action includes the whole or a part of an agency . . . order."  5 U.S.C. § 551(13).  Based on this standard understanding of the APA's provisions, the courts have had no trouble concluding denials of visa petitions constitute agency actions appropriate for review.  *See, e.g., Spencer Enterprises, Inc. v. United States,* 345 F.3d 683, 688 (9th Cir. 2003) (identifying the "particular agency action at issue" as "INS's denial of an immigrant investor visa petition"); *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) ("[B]ecause the INS's denial of [claimant's visa petition] was a final order, we conclude that the district court had jurisdiction over this matter."); *Khalil v. Napolitano*, 983 F. Supp. 2d 484, 488–89 (D.N.J. 2013) ("[T]he district courts may review the final determinations of visa denials when they are alleged to have violated the terms of the APA.").

   As for those petitions which have not been finally adjudicated (including, for example, those the employers themselves identify as not yet filed)[1], it may be useful to distinguish between the claims brought and the relief sought, because jurisdiction should not, ordinarily, depend on the nature of the relief requested—so whether any relief here might extend to applications not yet filed sheds very little light on this question of dismissal.  *See, e.g., Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 561 (1968) ("The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy.").  And even for purposes of evaluating the claims, whether the petition has been finally adjudicated may not matter much, particularly if the agency has developed some "definitive position" with respect to the statutory and regulatory language that

---

[1] Claims based solely on petitions not yet filed or adjudications not yet final clearly might present ripeness or standing issues in the typical case—but nobody seriously disputes the employers' claims here arise based largely, if not entirely, on adjudications already made final. *See, e.g.,* ECF No. 23 at 3–4 (seeking judicial review of "USCIS' decisions denying [employers'] H-2B petitions for temporary workers"); ECF No. 50 at 1 ("No matter how Plaintiffs may frame this lawsuit, they are before the Court seeking judicial review of [USCIS's] final decisions denying their . . . visa petitions.").

will largely dictate the result for any forthcoming petitions—as the employers suggest is the case here. *See, e.g., City of Dania Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007) (concluding an agency letter constituted final agency action where "[n]othing in the letter indicate[d] that the [agency's] statements and conclusions [were] tentative, open to further consideration, or conditional on future agency action."). Perhaps recognizing that principle, various courts have been willing to grant the kind of broad both backward- and forward-looking relief the employers seek, once a pattern or practice of mistaken or erroneous adjudication has been established—and a pattern of erroneous denials is precisely a showing the employers seek to make. *See, e.g.,* ECF No. 23 at 18–19 (alleging "USCIS has begun to deny H-2B petition that rely on peakload and one-time occurrence need at an unprecedented rate" despite presentation of labor certifications, lengthy history of approvals, etc.). This kind of pattern-or-practice claim, the courts have concluded, may well offer a possibility of relief even for submissions not yet adjudicated. *See, e.g., Schisler v. Heckler*, 787 F.2d 76, 82 (2d Cir. 1986) ("SSA opposes the request on the grounds that we may not, in advance of the adjudication of claims by the SSA, impose substantive requirements on those adjudications. We disagree."); *accord McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 492 (1991) (concluding court had jurisdiction to review general challenge to practices and policies employed by agency in processing applications, despite statutory bar applicable to review of individual denials); *cf. Abdullah v. INS*, 184 F.3d 158, 164 (2d Cir. 1999) (emphasizing that "a district court may exercise jurisdiction to adjudicate pattern-or-practice claims against the INS" regardless whether it has jurisdiction to review individual claims). That employers have alleged both a newly-settled agency policy position and a resulting pattern of erroneous adjudication suggests dismissal for lack of jurisdiction is inappropriate here, regardless whether any individual petition may give rise to an actionable challenge.

But however the discreteness or pattern-or-practice inquiries may be answered for purposes of analyzing jurisdiction, another obstacle remains for the government's "programmatic relief" argument. The classic "programmatic improvement" case on which the government relies featured claims alleging a whole host of potential legal violations by the Bureau of Land Management, including "failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, inordinate focus upon mineral exploitation, failure to provide required public notice, [and] failure to provide adequate environmental impact statements." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). This "wholesale" request for improvement was untethered to any "single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Id*. That kind of claim, the *Lujan* court explained, presented incurable ripeness problems, because no alleged violation had immediate actual or threatened effect, and it may have raised causation and redressability questions to boot. *See id*.; *see also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 568 (1992) (highlighting redressability problem with claim for programmatic relief where certain related agencies were not parties to the case).

Here, by contrast, the adjudications already made final have surely had effect on the employers, and the alleged policy or interpretive change governing those adjudications has had, and continues to threaten, immediate and real effects (and has already proved capable of repetition yet evading review). Just as importantly, neither the alleged violations nor the requested relief are nearly as broad as the violations and relief at issue in *Lujan*: the employers here have identified the single piece of statutory language, the two specific regulations, and the limited family of supporting regulations they believe have given rise to the agency's alleged errors, and they have identified the employers who have felt the effects and will continue to feel them. *See, e.g.,* ECF No. 23 at 3–4. Those considerations suggest the employers' claims cannot

fairly be characterized as claims for programmatic relief—but even if that characterization were appropriate, the ripeness, causation, and redressability problems typically associated with programmatic relief claims are largely absent here because the subject petitions, the consequent harms, and the appropriate fix are all immediately identifiable. *See, e.g., Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1516 (9th Cir. 1992) (rejecting an argument that claimants could not bring claims based on development decisions not yet made, concluding causation and redressability requirements were satisfied, and explaining, "[t]o the extent that the plan pre-determines the future, it represents a concrete injury that plaintiffs must, at some point, have standing to challenge").

Given the employers' presentation of claims based on alleged violations of the APA, their sufficiently specific identification of agency action, the presence of a pattern-or-practice allegation, the government's failure to identify any specific jurisdictional language in the provisions of the APA applicable to the employers' claims, and the absence of any of the problems a much broader claim for programmatic relief might present, the court cannot conclude the employers have failed to meet their burden of establishing jurisdiction here. The court will deny the motion to dismiss for lack of subject matter jurisdiction.

*Failure to State a Claim.* In support of its motion to dismiss for failure to state a claim, the government repurposes its arguments that the employers have failed to sufficiently identify final or discrete actions, and adds contentions that agency conduct in earlier years is irrelevant for purposes of evaluating the agency's conduct in subsequent years, that the employers have failed to identify any "change" in agency interpretation on which their claims may rely, and that the employers have not identified any evidence the agency failed to consider or failed to consider properly.

Before directly addressing the adequacy of the claim statements here, a prefatory note is

warranted given the state of the record. Typically, when a party seeks review of agency action under the APA, the district court functions in much the same way as an appellate tribunal. *See Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). A basic consequence may be that the case by definition presents solely a question of law and the complaint, appropriately read, presents no factual allegations at all—instead, it presents arguments regarding the proper legal conclusions to be drawn from the agency action or actions at issue. *Id*. And review, as the government points out, is typically based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously, whether the facts underlying any decisions are supported by substantial evidence, and related questions as contemplated by statute. *Id*.

Given those propositions, whether a motion to dismiss for failure to state a claim is cognizable or even analytically coherent here is questionable, for at least two related reasons. First, the parties appear to be in agreement that an APA claim or claims may be at stake based on the agency's denials of the identified petitions, and the government is probably not entitled to much, if anything, more for purposes of Rule 12(b), particularly given the circumscribed nature of APA review. *See, e.g., Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (clarifying that a party need do no more than inform the opposition of the "factual basis for [the] complaint" and discouraging any "further insistence on a punctiliously stated" theory of the pleadings). Second, the administrative record has not yet been filed here (and the government has not yet even answered the complaint), and whether certain legal conclusions are appropriately drawn for APA claims without any record is a matter of some debate in the case law. *See, e.g., Ghaly v. I.N.S.*, 1994 WL 63033, at *2 (N.D. Ill. Feb. 17, 1994) ("Since the administrative record has not been filed in connection with this case, this court is unable to determine whether the INS' decision was an abuse of discretion or whether the facts underlying the INS' decision are supported by substantial evidence."); *accord Remmie v. Mabus,* 846 F.

Supp. 2d 91, 95 (D.D.C. 2012) (denying a motion to dismiss an APA claim, reasoning "the administrative record has not yet been filed with the Court, making [any dismissal] determination rather difficult"); *cf. Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 2005 WL 1076071, at *5 (E.D. Wis. Apr. 27, 2005) ("The full administrative record has not been filed with the court as of the date of this decision, and I do not know whether plaintiffs have been able to review the full record and, if not, whether they intend to make additional arguments after they do so.").

But the Ninth Circuit has in the past embraced motions to dismiss for failure to adequately state APA claims, and thus the court addresses each of the employers' claims in turn. *See, e.g., Zixiang Li v. Kerry,* 710 F.3d 995, 999 (9th Cir. 2013). The *Kerry* court applied to various APA claims the familiar Rule 12 standard, explaining dismissal "under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable theory or (2) fails to allege sufficient facts to support a cognizable legal theory," and the court applies that standard here. *Id.*

*Claim I – Regulatory Violations*. In their first claim, the employers make several allegations of "regulatory violation." They contend the Department of Labor ("DOL") certifications the employers received for each petition should have been dispositive as to temporary need, at least in the absence of any additional countervailing evidence presented to United States Citizenship and Immigration Services ("USCIS"). That position is at odds with both the regulatory language and the case law and should be dismissed. *See, e.g.,* 8 C.F.R. § 214.2(h)(1)(ii)(D) (characterization of nature of services or labor "subject to review by USCIS"); 8 C.F.R. § 214.2(h)(6)(iii)(A) ("The labor certification shall be advice . . ."); *see also Soccer Centers, LLC v. Zuchowski*, 2017 WL 1015844, at *4 (D.N.J. Mar. 15, 2017) ("Plaintiff's reliance on the Department of Labor's certification falls short . . .").

But the employers contend in the alternative that, regardless whether the petitions initially, based on the DOL certifications, presented requests for peakload or one-time

occurrence employees, USCIS was required, but failed, to convert and then approve the petitions under whatever the most appropriate characterization of need may have been. The employers cite no specific authority for that proposition, but throughout the complaint they frequently make explicit the idea that they rely on basic principles of APA review—in other words, they claim the agency's failure on this ground was either arbitrary and capricious, or unsupported by substantial evidence, or unlawfully withheld, or some combination of the three. *See* 5 U.S.C. § 706; *see also Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 65 (2004) (noting party is entitled to review of both agency action and any inaction prohibited by law or regulation having the force of law). Any of those theories, given the complaint's allegations and the absence of an administrative record, constitutes a plausible theory of relief, and the court concludes dismissal of this contention, and thus the claim, is inappropriate under Rule 12(b)(6).

The remaining contentions appear to offer support for those potential theories and, in some cases, are duplicative of theories advanced in other claims, and the court will give them no further attention here.

*Claim II – 5 U.S.C. § 553 Rulemaking Required.* As a second claim, the employers contend the agency has adopted new interpretations of the regulatory definitions governing the petitions here, despite the absence of any changes in the relevant law or regulations or the operative facts—and changing an interpretive rule or policy in these circumstances without engaging in the administrative rulemaking process set forth in 5 U.S.C. § 553, they maintain, violates the requirements of that section.

As a general principle, the APA permits agencies to freely adopt and change interpretive rules—regardless whether consistent with earlier interpretations—without engaging in the rulemaking process, in part because interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez v. Mortg. Bankers Ass'n,*

135 S. Ct. 1199, 1204 (2015). The government suggests application of the principle here neatly disposes of this claim. But the inquiry is complicated by the countervailing principle that rules characterized as "substantive" or "legislative" are subject to rulemaking, and the distinction between "interpretive," "substantive," and "legislative" rules is rarely well-articulated or understood. *See id.*; *Comm. For Fairness v. Kemp*, 791 F. Supp. 888, 893 (D.D.C. 1992) ("It is not infrequently difficult to draw a precise distinction between rules which are merely interpretative of statutes and those which are legislative or substantive in character.").

Courts grappling with the distinction have described legislative rules as "those which create law, usually implementary to an existing law," and interpretive rules as "statements as to what the administrative officer thinks the statute or regulation means." *See, e.g., Gibson Wine Company v. Snyder*, 194 F.2d 329, 331 (D.C. Cir. 1952); *Cabais v. Egger*, 690 F.2d 234, 238 (D.C. Cir. 1982). Substantive and legislative rules have also been characterized as rules "affecting individual rights and obligations"—long an important touchstone for determining whether rules are binding or have the force of law. *Chrysler Corporation v. Brown*, 441 U.S. 281, 313 (1979). The Ninth Circuit, adopting something like that basic framework, has sometimes explained that substantive rules "effect a change in existing law or policy," while interpretive rules "merely clarify or explain existing law or regulations." *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983). Attempting to synthesize some of those conceptions, some courts have more recently explained that regardless the parties' characterizations, for purposes of determining whether a rulemaking requirement applies, the reviewing court is tasked with determining whether the rule or policy or change affects any rights or obligations, or "genuinely leaves the agency and its decisionmakers free to exercise discretion." *CropLife Am. v. E.P.A.*, 329 F.3d 876, 883 (D.C. Cir. 2003). But whatever the precise language to be applied, application of the general principles to a change of policy or interpretation made after long-

settled pattern or course of adjudication has often compelled a conclusion the change is substantive, because it affects rights or changes the law, and thus compelled the corollary conclusion that the change is impermissible, or subject to the APA's rulemaking requirement, or both. *See, e.g., Ruangswang v. Immigration & Naturalization Serv.,* 591 F.2d 39, 45–46 (9th Cir. 1978) ("The unexplained specific eradication of substantially the same added investor requirement during rule-making and the subsequent effort to reestablish the requirement by adjudication require us to be especially concerned whether the INS gave adequate notice to Mrs. Ruangswang."); *Lal v. I.N.S.,* 255 F.3d 998, 1007 (9th Cir. 2001), opinion amended on reh'g, 268 F.3d 1148 (9th Cir. 2001) ("To suddenly change course and add this requirement now is an arbitrary act that is impermissible and, even giving the BIA the deference it is due, should be overturned."); *cf. Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94–95 (D.C. Cir. 1997) (noting agency's past interpretations of regulation are more binding than its past statutory interpretations because "[o]therwise, the agency could evade its notice and comment obligation by 'modifying' a substantive rule that was promulgated by notice and comment rulemaking").

Given the case law, the crux of the claim here that some internal policy or interpretive change has caused an about-face in the agency's previously long-settled pattern of adjudication, and the absence of any records from the government offering some more plausible explanation for the facts the employers have alleged, the court concludes the employers have offered a plausible theory of relief and have thus adequately stated this claim.

*Claim III – 5 U.S.C. § 706(2)(A).* The employers' third claim appears at this stage to be their core claim: the government's denial of their petitions, after years and sometimes decades of approvals on the same facts and statutory and regulatory language, was (and remains) arbitrary and capricious and therefore unlawful under 5 U.S.C. § 706. The government conceded at argument that the employers have experienced at least "a change in result" here and

15

acknowledged no explanation has been given for why—but, it contends, those details are irrelevant because the employers have never been entitled to rely on the prior results.

Two general principles have application here. The fact that an agency, by mistake, oversight, or otherwise, has previously approved a visa petition "on one occasion does not create an automatic entitlement to the approval of a subsequent petition." *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 148 (1st Cir. 2007). But it may be "that a pattern of visa grants of sufficient magnitude could obligate the agency to provide a reasoned explanation for treating similar situations differently." *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1144 (D.C. Cir. 2014); *see also ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995). And despite the government's protests to the contrary, the courts appear to be in agreement that the fact the visa adjudications here were apparently all non-precedential need not matter for purposes of application of the general requirement that an agency give "reasoned explanation for treating similar situations differently." *See, e.g., Davila-Bardales v. I.N.S.*, 27 F.3d 1, 5 (1st Cir. 1994); *see also Sang Goo Park v. Attorney Gen.*, 846 F.3d 645, 654 (3d Cir. 2017) ("[T]he BIA's nonprecedential opinions have value in determining the agency's policies and practices[.]"); *De Leon v. Holder*, 761 F.3d 336, 344 (4th Cir. 2014) ("The BIA has adhered to this approach in a number of unpublished decisions affirmed by courts of appeals."). As the *Davila-Bardales* court explained, "the prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation," raises various arbitrariness concerns, and the agency should not then be permitted to "take refuge" behind its own past (mis)characterizations of which adjudications may constitute precedent. *Id.* ("[W]e see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier … cases."). It appears even the agency itself has in the past been aware of the very real

consistency problems visa adjudications pose—its predecessor's Office of General Counsel, for example, has advised that the agency in making these adjudications should "discuss, if appropriate, why such decision might be different from that made in similar cases in the past." Mem. from the Off. of Gen. Counsel, INS, to Paul W. Virtue, Act. Exec. Assoc. Comm'r., Immig. & Nat. Svc. 1-2, reprinted in 75 Interpreter Releases 323, 332-49 (1998).

And thus regardless whether prior agency adjudications have been precedential or non-precedential, it appears to be well-settled that an abrupt change in agency policy or decision pattern without adequate explanation of the rationale may be arbitrary and capricious and therefore unlawful. *See, e.g., Davila-Bardales,* 27 F.3d at 5 ("This zigzag course is not open to an agency when, as now, the agency has failed to explain why it is changing direction."); *De Leon*, 761 F.3d at 344 ("The BIA cannot apply its official-restraint standard broadly when broadness favors the government's position and narrowly when it does not."); *see also INS v. Yang*, 519 U.S. 26, 32 (1996) ("If an agency announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned."); *N.Y. Cross Harbor R.R. v. Surface Transp. Bd*., 374 F.3d 1177, 1181 (D.C. Cir. 2004); *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB*, 802 F.2d 969, 973-74 (7th Cir. 1986) (emphasizing agency cannot change direction without explaining rationale for change); *McHenry v. Bond*, 668 F.2d 1185, 1193 (11th Cir. 1982) (concluding explanation for change was irrational and thus arbitrary and capricious).

Given those principles, the government's concessions that the employers' results have changed and the agency has offered no explanation for the change, and the absence at this stage of any administrative records that might contravene the employers' account or offer some satisfactory explanation for the circumstances, the court concludes the employers have stated a

plausible theory of relief and have thus adequately stated this claim.

*Claim IV – 5 U.S.C. § 706(2)(E).* The employers had initially advanced the contention that the agency's denials of the visa petitions were unsupported by substantial evidence and were thus unlawful under 5 U.S.C. § 706(2)(E). But the government has since pointed out that section 706(2)(E) is inapplicable to the adjudications here and the employers now concede the section has no application. *See* ECF No. 43 at 29. The court will dismiss this claim.

*Claim V – Declaratory Judgment Act.* In their fifth claim, the employers ask for a declaratory judgment that the agency's course of conduct here was in various ways unlawful.

A request for declaratory relief, the court notes, does not typically constitute an independent cause of action—it generally offers a remedy based on some other underlying theory of relief. *See, e.g., Circle v. W. Conference of Teamsters Pension Tr.,* 2017 WL 4102490, at *3 (D. Or. Aug. 31, 2017) (no standalone claim for declaratory relief); *Barkett v. Sentosa Properties LLC*, 2015 WL 502319, at *18 (E.D. Cal. Feb. 5, 2015) ("[D]eclaratory relief is not an independent cause of action, but a remedy."). It also appears the contentions advanced in this claim are largely duplicative of those advanced in the preceding counts, which may independently suggest dismissal is appropriate. *See, e.g., Perret v. Wyndham Vacation Resorts, Inc.,* 889 F.Supp.2d 1333, 1346 (S.D. Fla. 2012) ("A court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings."). Based on the understanding a request for declaratory judgment cannot serve as a standalone claim, the court will dismiss this claim but permit the employers to maintain the various requests for declaration they make in their prayer for relief. *See, e.g., Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 975 (N.D. Cal. 2010) (dismissing declaratory judgment cause of action but permitting plaintiff to replead as requested remedy).

*Claim VI – Equitable Estoppel.* As a sixth claim, the employers contend that because the

agency has for many years granted visas "based on the same set of operative facts," it is "estopped from denying an identical petition based on the same set of adjudicative facts." They cite the recent Supreme Court case of *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) in support—but that case makes no mention of estoppel.

The Ninth Circuit cases that do examine claims of estoppel made against the government have established a very high bar for the claims, requiring a showing of "affirmative misconduct" by the government. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001). Affirmative misconduct, the *Socop-Gonzalez* court explained, has generally been defined as conduct encompassing a "deliberate lie" or a "pattern of false promises." *Id.* Negligence, even over a period of many years, will not suffice. *See, e.g., id.; Woong Joo Yoon v. I.N.S.*, 236 F. App'x 270, 271 (9th Cir. 2007) (unpublished); *Murkerjee v. INS*, 793 F.2d 1006, 1009 (9th Cir. 1986). And a claim failing to make these required allegations cannot support relief. *See, e.g., Mauting v. I.N.S.*, 16 F. App'x 788, 791 (9th Cir. 2001) (unpublished); *see also Socop-Gonzalez*, 272 F.3d at 1184.

Here, the employers have advanced no allegation of deliberate lie or pattern of false promise, or any other misconduct that might satisfy the strict standard set for claims of government estoppel. The court will dismiss this claim for failure to state a plausible theory of relief.

*Claim VII – Injunctive Relief*. As their seventh and final claim, the employers ask for broad injunctive relief. Much like their claim for declaratory relief, this claim appears to present only a request for remedy, as opposed to some plausible underlying theory of relief. And courts in the Ninth Circuit are in agreement, as they have been for claims of declaratory relief, that a claim for "injunctive relief is not a standalone cause of action in federal courts." *San Francisco Apartment Ass'n v. City & Cty. of San Francisco*, 142 F. Supp. 3d 910, 935 (N.D. Cal. 2015);

*Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."). The court will dismiss this claim but permit the employers to maintain their requests for injunction as part of their prayer for relief.

*The Request for Preliminary Injunction and the Magistrate's Report and Recommendation.* Turning to the preliminary injunction request, under 28 U.S.C. § 636(b)(1), the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." When a party timely objects to a magistrate's report and recommendation, the court is required to "make a de novo determination of those portions of the report" for which objection has been made. 28 U.S.C. § 636(b)(1). By contrast, the court need make no "review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003). Having reviewed de novo those portions of the Magistrate Judge's report for which the employers have presented objections, the court adopts in part and modifies in part the report, and modifies the resulting recommendation.

Before digging into the disputed portions of the report, it may be useful to emphasize that several of the standard preliminary injunction inquiries are no longer in dispute. The parties have lodged no objections, in other words, to the Magistrate Judge's conclusions that: (1) many of the employers have adequately established a likelihood of certain, great, actual, and imminent financial and other tangible and intangible harms in the absence of an injunction, and monetary damages would be unrecoverable under the APA; (2) the balance of the equities weighs in the employers' favor; and (3) the public interest weighs in the employers' favor. Those conclusions, and their underlying findings, are well made. The absence of preliminary relief here poses various massive, concrete, and imminent risks of harm for the employers and the public more generally, from domino-like webs of bankruptcies and public health crises to environmental

harms and stalled and substandard completion of projects critical to the nation's security and defense.

The substantial and quantifiable economic harms alone—already unmanageable for some of the employers—are sufficient to establish irreparable harm, given that they cannot later be made whole under the APA. *See, e.g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932 (1975) ("[A]bsent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless."); *Express One Int'l, Inc. v. United States Postal Serv.*, 814 F.Supp. 87, 91 (D.D.C. 1992) (finding irreparable injury where loss of 10–year $1 billion contract would cause annual loss of $130 million, would impair bidder company's relationships with subcontractors, and would cause significant capital costs and lay-offs); *McGregor Printing Corp. v. Kemp,* 1992 WL 118794, at *5 (D.D.C. May 14, 1992) (concluding "the irretrievable monetary loss to [plaintiff] in combination with the loss in employment to [plaintiff's] employees" amounted to irreparable harm). And the significant macroeconomic, health, environmental, and security concerns—concerns Congress has apparently shared in establishing Guam-specific treatment[2] for these visas over both the past decade and in the very recent National Defense Authorization Act for Fiscal Year 2018—are clearly sufficient to support the Magistrate Judge's conclusions that the balance of the equities and the public interest weighs in favor of the employers, and perhaps heavily so. Having reviewed these portions of the report and recommendation despite the lack of any objection, the court adopts the Magistrate Judge's findings and conclusions as slightly modified here: the employers have established near certain substantial and irreparable harm, and the balance of the

---

[2] *See, e.g.,* Consolidated Natural Resources of Act of 2008, Pub. L. No. 110-229, § 6(b), 122 Stat. 754 (2008) (exempting Guam nonimmigrant worker visas from statutory cap); National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, § 1049(b)(1)(B), __ Stat. ___ (2017) (exempting certain Guam nonimmigrant worker visas from temporariness requirement).

equities and public interest factors weigh heavily in their favor.

Those conclusions apparently unobjectionable, the parties have instead focused their attention on the question of the likelihood the employers will ultimately succeed on any of their claims here. As a first point of contention, they disagree as to how best to characterize the nature of the preliminary relief the employers seek, and thus as to precisely what showing of "likelihood" the employers must establish. The Magistrate Judge observed that the employers have requested "an order from this court remanding the case to USCIS and directing USCIS to reopen and reverse the decisions . . . which related to the 'peakload' and 'one-time occurrence' definitions." *See* ECF No. 61 at 8. That kind of order, the Magistrate Judge reasoned, would go well beyond preservation of the status quo, because "the court is being asked to order USCIS to alter its decisions." *Id*. And as a result, the Magistrate Judge concluded the request constituted a request not for prohibitory injunction, but instead one for affirmative, mandatory injunction, subject "to heightened scrutiny and [not to be] issued unless the law and facts clearly favor the Plaintiffs." *Id*.

But what constitutes preservation of the status quo here requires slightly more analysis. The relevant status quo, the Ninth Circuit has explained, is the legally relevant relationship between the parties prevailing before any controversy has arisen. *See, e.g., Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). And, as other courts have explained, requiring a party who has "recently disturbed the status quo to reverse its actions . . . restores, rather than disturbs, the status quo ante." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012). Earlier Ninth Circuit cases illustrate the principle. *See, e.g., Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 732 (9th Cir. 1999). In *Bay Area Addiction*, certain pre-existing laws would have permitted relocation of a methadone clinic to the town of Antioch, but before the plaintiff clinic operators could open in Antioch, the town passed

an ordinance to prevent the opening. *Id.* at 732 n.13. The clinic operators sought an injunction, but Antioch contended an injunction forcing the town to allow the clinic would constitute a mandatory injunction. *Id.* The *Bay Area Addiction* court rejected that argument, concluding the injunction merely preserved the uncontested status quo prevailing before Antioch had upset it. *Id.* Similarly, more recently, where a group of plaintiffs challenged the enforceability of a change in Arizona policy that rendered them no longer eligible for driver's licenses, the *Arizona Dream Act* court noted Arizona had changed the prevailing status quo by changing its policy, and it emphasized that "injunctions that prohibit enforcement of a new law or policy," are to be construed as prohibitory, and subject only to the standard preliminary injunction inquiries, as opposed to the potentially heightened standard for requests for mandatory relief. *See, e.g., Arizona Dream Act Coal.*, 757 F.3d at 1061.

Here, the employers have alleged a change in policy or interpretation resembling the changes featured in *Bay Area Addiction* and *Arizona Dream Act*, and they have alleged that before the change, the positions they aim to fill were eligible for visas under one or more of the agency's temporary need categories. The agency's alleged change in position, however, appears to have rendered them ineligible for these visas—and the government does not dispute the remarkable "change in result" the employers have identified—and thus the employers seek an injunction restraining the agency from applying the new position until the merits of this case can be evaluated. That, it seems, presents a classic case of one party affirmatively changing the status quo and a responding party seeking to restore it, and the Ninth Circuit has explained that in those circumstances, the preliminary relief sought is appropriately characterized as prohibitory. *See, e.g., Arizona Dream Act Coal.*, 757 F.3d at 1061 ("The status quo before Defendants' revised their policy in response to DACA was that Plaintiffs were subject to a legal regime under which all holders of federal Employment Authorization Documents were eligible for Arizona

driver's licenses. By revising their policy in response to DACA, Defendants affirmatively changed this status quo.").  The court will modify the Magistrate Judge's conclusion accordingly and conclude the employers need only make the standard showing of likelihood of success for purposes of preliminarily restoring the status quo.[3]

Much ink has been spilled in analyzing the question of what "likelihood" might mean in these circumstances.  The *Winter* case setting forth the four-factor framework for evaluating the propriety of preliminary relief appeared to discourage use of the "sliding-scale" approach previously applied by the courts, which had allowed a strong showing of one element, like likelihood of success, to compensate for a weaker showing of another, like irreparable harm.  *See, e.g., Winter*, 555 U.S. at 22.  But the Ninth Circuit has more recently made clear that various versions of the sliding-scale approach have survived, and that a party seeking relief need not always show "probability of success"—instead, a preliminary injunction is appropriate whenever a party demonstrates that "serious questions going to the merits [are] raised" and the balance of hardships tips sharply in its favor.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A party must also establish a likelihood of irreparable injury and that the injunction is in the public interest, but the government has not disputed the establishment of those elements here and the employers have, as noted, made the requisite showings.[4]  *Id.*  The court therefore

---

[3] The court notes the characterization as prohibitory or mandatory should not matter much, if at all, here for at least two reasons.  First, as the Ninth Circuit has recently explained, various authorities question "whether the line between mandatory and prohibitory injunctions is meaningful," and any attempt to distinguish between them may well be counterproductive.  *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017).  And second, the showing of significant and irreparable damage at stake here may by itself satisfy whatever heightened standard mandatory relief requires.  *See, e.g., United States v. Barrows*, 404 F.2d 749, 752 (9th Cir. 1968) ("[W]here irreparable damage to the Government's property interest was threatened, the court did not abuse its discretion in granting temporary relief which, in effect, disturbed the status quo.").

[4] Whether asking any of these questions makes much analytical sense in a judicial review proceeding is up for debate, given that typically, all the plaintiff is entitled to do is "try to persuade the district judge and then [the court of appeals], on the basis of evidence that was before [the agency at the time of its decision], that the decision was unlawful."  *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 445 (7th Cir. 1990).  The question in most of these cases, in other words, is simply "whether the plaintiff is entitled to an injunction, period,"—the standard "preliminary"

24

applies "the serious questions test" in analyzing the employers' likelihood of success. *See, e.g., id.* ("Because it did not apply the "serious questions" test, the district court made an error of law in denying the preliminary injunction.").

And given the state of the record here, the court believes the employers have shown—to the extent they can without knowing whether they have seen much, if any, of the agency's supporting documentation or internal guidance—serious questions regarding the merits. To fill the gaping evidentiary hole as it currently stands, the employers have submitted various relevant documents, including exhibits from the individual employers outlining the positions for which they have recently sought visas and the status of those petitions, declarations and documentation establishing the size of the H-2B workforce on Guam over the past two decades, and declarations and documentation in support of the notion that the needs for which the employers have sought visas have not changed much, if at all, over time. *See, e.g.,* ECF No. 8 at 6-7; *id.* Exh. 2. They have added judicially-noticeable evidence that despite the unchanged needs, the pattern of adjudication result has undergone drastic change for Guam-based employers: from an approval rate approaching 100% prior to 2015 for visas sought for peakload and one-time occurrence needs, to a denial rate of 76% in 2015, to a denial rate approaching 100% in 2016. *See* ECF No. 23 Exhs. 1, 2. They have also submitted documentation received from the agency which provides some explanation for denials in individual cases, but conspicuously omits any explanation as to why needs previously eligible for visas are no longer eligible and any recognition that a pattern of result may have in fact changed. *See, e.g.,* ECF No. 23 Exh. 6 at 2–7. That documentation, the court notes, is entirely unchallenged by the government at this point, which has submitted no documentation of its own and has resisted production of the administrative records at issue.

questions of relative harms, irreparability, and even likelihood of success may be irrelevant. *Id.*

On this limited record, there appears to be ample authority in the case law for concluding the employers have raised serious questions as to the merits. The court recognizes that an agency's adjudicative interpretations and its interpretation of its own regulations are often entitled to significant deference. *See, e.g., United States v. Larionoff,* 431 U.S. 864, 872 (1977); *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414 (1945). Those interpretations will typically "become[] of controlling weight unless [they are] plainly erroneous or inconsistent with the regulation." *See Bowles,* 325 U.S. at 414. But at the same time, the agency's substantial interpretive and adjudicative discretion is constrained by the longstanding administrative law requirement of "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 374 (1998) ("[A]djudication is subject to the requirement of reasoned decisionmaking as well."). The reasoned-decisionmaking requirement, the Supreme Court has often observed, includes a duty to explain any "departure from prior norms." *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808 (1973). And norms may have arisen, the Supreme Court has more recently indicated, in any scenario where an agency has historically applied or established a general policy by "settled course of adjudication." *Yang,* 519 U.S. at 32; *see also De Leon,* 761 F.3d at 344. Where the agency then departs from application of that policy without explanation, the courts are in widespread agreement that the departure is subject to reversal as an abuse of the agency's discretion. *See id.; see also Int'l Union, UAW v. NLRB,* 802 F.2d 969, 973-74 (7th Cir. 1986) ("[A]n administrative agency is not allowed to change direction without some explanation of what it is doing and why."); *see also Stardyne, Inc. v. NLRB,* 41 F.3d 141, 153 (3d Cir. 1994) ("[T]he Board's failure . . . to follow or repudiate its prior holding . . . was arbitrary and capricious."); *N.Y. Cross Harbor R.R. v. Surface Transp. Bd.,* 374 F. 3d 1177, 1183 (D.C. Cir. 2004) ("[N]owhere did the Board distinguish the earlier—and uniform—adverse . . . precedent."); *PDK Labs. Inc. v. United States Drug Enforcement Admin.,*

362 F.3d 786, 799 (D.C. Cir. 2004) (remanding agency decision for an unexplained departure). And, as noted above in discussion of the government's motion to dismiss, the duty of explanation for departure is no less applicable for patterns of non-precedential adjudication, which is how the government characterizes the denials here. *See, e.g., Davila-Bardales,* 27 F.3d at 5–6; *see also Sang Goo Park*, 846 F.3d at 654 ("There is no apparent administrative-law principle that removes unpublished, nonprecedential agency decisions from the reach of review for arbitrariness"); *De Leon*, 761 F.3d at 344; *Sierra Club N. Star Chapter v. LaHood*, 693 F. Supp. 2d 958, 973–74 (D. Minn. 2010) ("[W]hen an agency treats two similar transactions differently, an explanation for the agency's actions must be forthcoming."); *accord Springfield, Inc. v. Buckles*, 292 F.3d 813, 819 (D.C. Cir. 2002) (noting that while agency views may change, courts require "a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored").

Application of the duty-of-explanation authority here raises the requisite serious questions—because the very limited record here compels conclusions that the agency (1) established a pattern of adjudication, and (2) has now departed from that pattern without acknowledgement or explanation. And as noted, the government has not, at this point, offered any alternative evidence—it merely contends the facts are different and the legal authority regarding norms, departures, and explanation is therefore inapplicable. Given this record, the government's failure to challenge it, the relevant legal authority, and the importance of expeditious decision if anything resembling the status quo is to be preserved, the court concludes the employers have established the requisite likelihood of success. *See, e.g., Martins v. United States Citizenship & Immigration Servs.*, 962 F. Supp. 2d 1106, 1124 (N.D. Cal. 2013) ("In light of the evidence and authority that Mr. Martins puts forth and Defendants' failure to challenge it or make any argument to support a contrary conclusion, the court finds that Mr. Martins has

shown a likelihood that he will succeed on the merits."); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[G]iven the haste that is often necessary if [the status quo is] to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). The court therefore modifies the Magistrate Judge's conclusion here, concludes the employers have raised serious questions regarding the merits and the other preliminary injunction factors weigh sharply in their favor, and concludes preliminary injunctive relief is warranted.

*Scope of the Injunction*. Having made that determination, a question remains as to the appropriate scope of the relief. The Supreme Court has advised that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Any appropriate tailoring must be mindful of both the injunction's purpose, which is to restore the status quo pending any final resolution, and the requirement that relief "must be tailored to remedy the specific harm alleged." *See, e.g., McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012). In the final analysis, the court granting relief should aim to "protect all . . . whose interests the injunction may affect." *Bhd. of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 532 (1960).

On the surface, the parties' hotly-debated dispute as to what precisely constitutes the "status quo" might appear to present some difficulties for fashioning the remedy, particularly in the absence of an administrative record. Based on the limited documentation provided by the employers, the status quo appears to encompass some pattern of positive adjudication—but for the most part, what rationale, or rationales, the agency applied (or declined to apply) in granting those previous petitions is unknown. The agency may have, as the employers allege, historically applied some policy, guidance, or interpretation, which has now changed. It may have even previously applied starkly different interpretations of the peakload and one-time occurrence

regulatory language.  Or individual adjudicators with certain views of the underlying facts may have retired or been replaced.  Or an individual adjudicator's understanding of the facts, or the needs of the employers, may have changed over time.  None, any, or all of those circumstances may have transpired.  Whether any of those scenarios may be distinguishable or excusable for purposes of evaluating the agency's underlying obligation is unclear.

But despite those uncertainties, one proposition regarding the status quo is reasonably clearly established, at least on this limited record: for at least twenty years, somewhere between 95% and 100% of temporary worker petitions here on Guam were granted.  The simple corollary is this: it was historically true that these petitions were *not denied* based on failure to satisfy a peakload or one-time occurrence condition.  Now, by contrast, the parties are in agreement that the agency is regularly denying petitions based on failure to satisfy those conditions.  And thus the appropriate scope of preliminary relief is straightforward.  To restore the parties to the status quo and do no more, and to best protect all interested parties, the agency must be preliminarily enjoined from relying on failure to satisfy peakload or one-time occurrence conditions as grounds for denying temporary worker petitions submitted by the employers (and perhaps any parties similarly situated), in the absence of adequate explanation as to how and why the pattern of adjudication has changed.  The court takes no position as to whether any petitions submitted will meet (or have met) any other eligibility criteria, or what, if anything, might constitute an adequate acknowledgement of and explanation for departure.  *See, e.g, Arizona Dream Act Coal.*, 757 F.3d at 1061; *Davila-Bardales v. I.N.S.*, 27 F.3d at 6; *see also Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1344 (N.D. Ga. 2017) (preliminary enjoining USCIS's adjudication in a manner inconsistent with prior policy and ordering reconsideration consistent with established legal principles).

*The Renewal of the Motion for Discovery or Supplementation of the Administrative*

*Record.* As the employers search for an answer to the question of why the pattern of adjudication here has taken such an abrupt turn, they quite understandably seek any agency documentation or evidence relating to the peakload and one-time occurrence conditions on which adjudicators may have relied, directly or indirectly, both historically and more recently. The request may well be warranted, for at least three related reasons. First, where a party can make a showing the agency has failed to file the entire administrative record with the court, completion and/or supplementation is appropriate. *See, e.g., Regents of Univ. of California v. United States Dep't of Homeland Sec.,* 2017 WL 4642324, at *5 (N.D. Cal. Oct. 17, 2017) ("It is evident that Acting Secretary Duke considered information directly, or indirectly, through the advice of other agencies and others within her own agency. These documents, as set forth in detail below, should be made part of the administrative record and must be produced by defendants[.]"); *The Fund for Animals v. Williams,* 391 F.Supp.2d 191, 194 (D.D.C. 2005) (supplementing administrative record upon a showing the government had excluded relevant documents adverse to the agency's position); *Ad Hoc Metals Coal. v. Whitman*, 227 F.Supp.2d 134, 140 (D.D.C. 2002) (supplementing administrative record upon showing that document was presented at an agency-sponsored workshop, even where comment period had closed, where document contained adverse scientific views and evidence suggested the agency considered it). Second, given the near-universal understanding that an agency has some obligation to apply its positions and policies consistently across proceedings, the courts have been frequently willing to grant limited supplementation of documentation and evidence of any internal policy, guidance, or determination even indirectly related to the determinations made in a given proceeding. *See, e.g., Pub. Citizen v. Heckler,* 653 F. Supp. 1229, 1237 (D.D.C. 1986) (admitting evidence of prior internal and external statements of agency inconsistent with and adverse to most recent agency position, and opining "[f]or an agency to say one thing—that all raw milk is a known

public health risk, and do another—refuse to ban all types of raw milk, is the essence of arbitrary action."); *see also Fund for Animals*, 391 F. Supp. 2d at 199 ("Supplementation of the administrative record is warranted in challenges of the procedural validity of an agency's action."); *Glob. Computer Enterprises, Inc. v. United States,* 88 Fed. Cl. 52, 71 (2009) (admitting, in bid protest case, extra-record evidence of how other potential and actual bidders on a contract might have understood its requirements). And third, while the government frequently takes the position that internal communications, drafts, and policies are not properly part of the administrative record, the courts in the Ninth Circuit are in agreement that deliberative process evidence is "part of the universe of materials directly or indirectly considered by agency-decision-makers" and must be made part of the record. *Ctr. for Food Safety v. Vilsack*, 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017); *see People of the State of California ex rel. Lockyer v. U.S. Dep't of Agric.,* 2006 WL 708914, at *3 (N.D. Cal. Mar. 16, 2006) ("Plaintiffs have also shown that the record is incomplete because it lacks internal and external agency documents relating to the decision-making process[.]"); *United Farm Workers v. Administrator, U.S. EPA,* 2008 WL 3929140, at *2 (N.D. Cal. Aug. 26, 2008) (explaining court's review of whole record under the APA includes any "internal correspondence, memoranda and drafts that were part of the EPA's decision making process").

But any rulings regarding the sufficiency of the administrative record as designated by the agency, whether it might require supplementation or completion, and whether the employers may be entitled to any additional discovery are probably premature at this point. *See, e.g., Banner Health v. Sebelius,* 905 F. Supp. 2d 174, 187 (D.D.C. 2012) ("[B]ecause at the time the instant motions were fully briefed the Secretary had not yet filed the complete administrative record with the Court, the Court declines to issue any holdings regarding the scope of the administrative record."). The court will therefore deny as premature the portion of the

employers' motion seeking supplementation and grant the portion requesting immediate production of the administrative records at issue in this case.

## IV. CONCLUSION

Preliminary injunctions are extraordinary remedies. And an agency is entitled to wide latitude in administering its programs. But where, as here, the chosen course appears to give rise to serious legal questions and enormous and potentially irremediable effects for named parties and society at large, the stale saw regarding "desperate times" takes on a special kind of significance. The agency's most recent course prompts serious legal questions and poses very real threats to the parties, the island, and the nation, in the form of inevitable bankruptcies, public health and environmental issues, and security and defense dilemmas, among whatever other untold complications. These rare circumstances call for rare relief.

The Defendants' motion to dismiss (ECF No. 30) is **GRANTED in part** and **DENIED in part**. Plaintiffs' Claims ("Counts") 4, 5, 6, and 7 are **DISMISSED**. The Plaintiffs' motion for preliminary injunction (ECF No. 8) is **GRANTED in part**.[5] The Magistrate Judge's Report and Recommendation (ECF No. 61) is **ADOPTED in part** and **MODIFIED in part** as noted.

It is **ORDERED** that the Defendants produce, as soon as is practicable, the administrative record for all petitions identified by the Plaintiffs that have been previously finally adjudicated as of the date of this Order.

It is further **ORDERED** that USCIS is preliminarily enjoined from relying on application of the reasoning presented in its denials of the FY 2015 and FY 2016 petitions identified by the Plaintiffs to deny any petitions previously submitted by the Plaintiffs or any petitions they submit after the date of this Order, in the absence of adequate acknowledgement of a prior course of

---

[5] The parties briefly presented several additional oral evidentiary motions at the December 11 hearing. Those motions, dispositions of which have been unnecessary for purposes of resolving the questions the court examines in this order, are denied as premature and/or moot. The parties are free to reassert the motions as appropriate later in the proceeding.

adjudication and adequate explanation for departure from that course. The earlier denials are vacated.

It is further **ORDERED** that Defendants shall reconsider any prior petitions from the Plaintiffs still eligible for prospective treatment, and shall adjudicate any petitions submitted by the Plaintiffs after the date of this Order, in a manner consistent with both any longstanding practice and this Order. The court expresses no opinion as to whether any petitions may meet any relevant eligibility criteria.

It is further **ORDERED** that the Plaintiffs' prior labor certifications shall remain valid through the end of the next period in which each individual Plaintiff may petition for and receive a temporary visa.

It is further **ORDERED** that this Order shall remain effective until further order of the court.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Jan 24, 2018**