Jeff Joseph
12203 East Second Ave
Aurora, CO 80011
(303) 297-9171
Fax: (303) 733-4188
jeff@immigrationissues.com
Attorney for Plaintiffs and Class

UNITED STATES DISTRICT COURT
For the
District of Guam

| | |
|---|---|
| Guam Contractors Association, *et al.* <br><br> Plaintiffs-Petitioners, <br><br> v. <br><br> William P. Barr, Attorney General of the United States, *et al.*, <br><br> Defendants-Respondents. | CASE NO. 16-cv-00075 <br><br> PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ECF NO. 126 |

**Cases**

*Airmark Corp. v. FAA*, 758 F.2d 685, 691-92 (D.C. Cir. 1985) ................................................... 11
*Arizona Dream Act Coal. V. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ................................ 4
*F.C.C. v. Fox Television Stations, Inc.* 556 U.S. 502, 515 (2009) .............................................. 10
*Fund for Animals v. Norton*, 294 F.Supp. 2d 92, 115 (D.D.C. 2003) ........................................... 8
*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911) ............................................. 13
*Hecht Co. v. Bowles*, 321 U.S. 321, 329-330 (1944) ................................................................... 8
*In re Polar Bear Endangered Species Listing & § 4(d) Rule Litig.*, 818 F.Supp. 2d 214, 239 (D.D.C. 2011) .................................................................................................................... 8
*Kisor v. Wilkie,* 588 U.S. ____ (2019) ........................................................................................ 11
*Matter of Artee Corp.*, 18 I&N Dec. 366 (Comm 1982) ............................................................... 6
*National Cable & Telecommunications Assn. v. Brand X Internet Services*, 545 U.S. 967, 981 (2005) ............................................................................................................................... 10
Schanen v. United States Dep't of Justice, 798 F.2d 348, 350 (9th Cir. 1986) ........................... 13
*Small Refiner Lead Phase-Down Task Force v. U.S.E.P.A.*, 705 F.2d 506, 553 (D.C. 1983) ....... 8
*Stone v. City of San Francisco*, 968 F.2d 850, 856 & n.9 (9th Cir. 1992) .................................... 6
*U.S. v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) .......................................... 7
*United States v. Gavilan Joint Community College Dist.*, 849 F.2d 1246, 1251 (9th Cir. 1988). 13
United States v. National Medical Enters., Inc., 792 F.2d 906, 911 (9th Cir. 1986) ................... 13

**Statutes**

5 U.S.C. § 702 ........................................................................................................................... 7, 12
5 U.S.C. § 706 ................................................................................................................................ 8
5 U.S.C. 706(1) .............................................................................................................................. 8

## I. INTRODUCTION

After now five filings related to the issue of contempt, oral arguments in front of an impartial adjudicator, and an issued Report and Recommendation ("R and R"), ECF No. 126, the Defendants once again object to the motion for contempt against them and attempt to further delay these proceedings. The issue has been fully briefed. The Defendants' new filings do not present novel arguments or legal issues, but rather rehash the same arguments they have made before. Plaintiffs have demonstrated by clear and convincing evidence that the Defendants have

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

1

failed to comply with this Court's Preliminary Injunction Order ("PI Order"), ECF No. 82, and there exists no articulated reasonable or good-faith explanation for this failure.  Further, despite Defendants' claims to the contrary, the power of the Court to grant sanctions has been demonstrated, fully briefed, argued, and a well-reasoned decision has been issued on the matter.  The Magistrate Judge made specific factual findings and legal conclusions based off a careful reading of all evidence and arguments and after hearing from the parties themselves.  For these reasons, Plaintiffs request that this Court deny Defendants' request for oral argument, follow the Magistrate Judge's Report and Recommendations, find Defendants in contempt of court, and grant appropriate sanctions.

## II. OBJECTION TO ORAL ARGUMENT

Plaintiffs have already participated in one oral argument on the issue of contempt, and the parties have now filed five briefs and motions arguing the legal and factual bases for contempt against the Defendants.  The relevant facts and law have already been set forth, and, as seen by the Defendants' objections, legal arguments are now simply being rehashed.  There is nothing to new to present to the court and a second round of oral arguments will not assist the court in any further understanding of the issues presented.  Further, oral arguments would be needlessly costly to the Plaintiffs, further delay this case (which has already been pending for nearly three years) and be only minimally useful for the Court in deciding the present issue.  For these reasons, Plaintiffs object to the Defendants' request for another oral argument in front of a new court and ask that this Court deny Defendants' request for oral argument.

There has, however, not been a hearing on the issue of sanctions.  If the Court is satisfied that contempt has been established and would like a hearing on what sanctions, if any, would be appropriate, Plaintiffs agree that such a hearing would be beneficial and useful to the Court.

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

2

If the Court finds that oral argument would be helpful or necessary in this matter, Plaintiffs request that the Court order that such a hearing be conducted by telephone. Plaintiffs would also request that reimbursement for any actual legal expenses and costs for oral argument be considered in any sanctions ordered.

### III. ARGUMENT

Defendants assert that their interpretation of this Court's PI Order is reasonable and in good faith, and thus is not in contempt of this Court's order. However, absent a piecemeal and tortured reading of the PI Order and a disregard for the scope and nature of the present suit itself, Defendants' interpretation and Defendants' actions in conformance with this interpretation are plainly unreasonable and by no means in good faith. The Magistrate Judge methodically marched through the Defendants' obligations under the PI Order and Defendants' actions subsequent to the issuance of the Order to correctly find that Defendants both failed to comply with the order and that appropriate sanctions should be ordered.

**A. The Magistrate's Report and Recommendation was correct in recommending this Court find Defendants did not comply with the PI Order.**

Defendants, once again, contest a finding of contempt based on the assertion that their interpretation of the PI Order was in good faith and was reasonable. However, the context of the present suit, combined with the language of the PI Order itself renders Defendants' interpretation of the PI Order plainly unreasonable and indefensible. The Magistrate Judge considered all of the legal issues presented both herein and in previous filings, examined all of the relevant facts, and heard from the parties themselves in oral argument. The conclusion the Magistrate Judge made that the Defendants "failed to meaningfully appreciate the implications, ramifications, and reach of the Court's PI Order" and recommendation that this Court find the Defendants have
Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

3

"failed to comply with the Court's PI Order" are supported by both law and fact, and this Court should follow them. *See* ECF No. 126 at 12-13.

The present suit concerns a plaintiff class that, for two decades, saw approval ratings approaching 100% for H-2B visas which had been sought for peakload and one-time occurrence needs. In 2015, however, these approval ratings, based on the same operative facts, plummeted, with 76% of petitions denied. In 2016, denial rates reached nearly 100%. *See* ECF No. 23-1. Thus, Plaintiff Class filed the present suit, alleging that there has been an *agency-wide* change in policy related to H-2B applications for Guam, in violation of APA notice and comment requirements. The Court made an explicit finding that "[t]he absence of preliminary relief here poses various massive, concrete, and imminent risks of harm for the employers and the health of the public more generally, from domino-like webs of bankruptcies and public health crises to environmental harms and stalled and substandard completion of projects critical to the nation's security and defense." ECF No. 81 at 20-21.

To prevent these harms, the court issued an injunction to restore the status quo, or, as the Court defined, "the legally relevant relationship between the parties prevailing before any controversy has arisen." ECF No. 81 at 22 (*citing Arizona Dream Act Coal. V. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). As to what the status quo was, and to what the Court was restoring, it stated:

> "one proposition regarding the status quo is reasonably clearly established . . . for at least twenty years, somewhere between 95% and 100% of temporary worker petitions here on Guam were granted. The simple corollary is this: it was historically true that these petitions were *not denied* based on a failure to satisfy a peakload or one-time occurrence condition. Now, by contrast, the parties are in agreement that the agency is regularly denying petitions based on failure to satisfy those conditions. And thus the appropriate scope of preliminary relief is straightforward. To restore the parties to the status quo and do no more, and to protect all interested parties, **the agency must be preliminary enjoined from relying on failure to satisfy peakload or one-time occurrence conditions as grounds for denying temporary worker petitions submitted by the employers** . . . **in the absence of adequate**

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

4

**explanation as to *how* and *why* the pattern of adjudication changed.**" ECF No. 81 at 29 (emphasis added).

Defendants were thereafter enjoined from relying on application of the reasoning presented in its denials of FY 2015 and 2016 petitions, that of temporary need, when denying class members' petitions absent an adequate acknowledgment of a prior course of adjudication and an adequate explanation for departure from that course. See ECF No. 81 at 32-33. In other words, Defendants, by the *plain wording* of the PI Order have been enjoined from denying H-2B petitions from Plaintiff Class solely on the basis of temporary need absent an acknowledgment of the previous *policy*, and an adequate explanation of both <u>how</u> the *agency wide* practice changed and <u>why</u> the *agency wide* practice changed.

Defendants object to the R and R, stating that it misreads the PI Order as enjoining Defendants from denying a class member's subsequently-filed petitions on temporary need grounds for any reason. This is a clear mischaracterization of the R and R, and a simple read of the report shows that it distinctly goes through a two-step analysis. First, the R and R analyzes and determines that Defendants have "relied upon the same rationale it employed in denying petitioners decisions" in violation of the PI Order. *See* ECF No. 126 at 6-9. Second, the R and R analyzes whether Defendants' actions properly fall in the exception to the mandate that it not rely on temporary need in subsequent denials, namely whether Defendants have provided an adequate acknowledgment of its prior course of conduct and provided an adequate explanation for departing from this course of conduct. *See Id.* at 9-11. The R and R then determines that the explanation given by Defendants was inadequate. *Id*. at 11. Each conclusion is discussed in turn.

    **i.**    **Defendants have adopted an unreasonable and bad faith interpretation of the PI Order.**

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

5

Defendants failed to comply with the plain wording and stated purpose of the PI order, and its objections to the R and R's findings are meritless.

As discussed above, Defendants were specifically enjoined from using temporary need as a basis for denial of class members' subsequent H-2B petitions. Nonetheless, Defendants continued to use temporary need to delay or deny such petitions. This, as the R and R discusses, was a clear failure to comply with the PI Order. *See* ECF No. 126 at 9. The subsequent denials issued in accordance with this interpretation are clear and convincing evidence of violation of the PI Order, and Defendants have not and cannot demonstrate that they performed "all reasonable steps within their power to insure compliance with the court's order." *Stone v. City of San Francisco*, 968 F.2d 850, 856 & n.9 (9th Cir. 1992).

Defendants argue that their failure was in good faith and based on a reasonable interpretation of the order, but Defendants' interpretation requires either intentional bad faith or simple willful blindness of the scope and nature of the PI Order and the present suit. For example, Defendants rest much of their interpretation on the phrasing in the PI Order that future petitions be adjudicated "in a manner consistent with both any longstanding practice and this Order." ECF No. 81 at 33. In interpreting this phrasing, Defendants take the position that this Court was ordering Defendants to adjudicate future petitions according to USCIS's policy of interpreting temporary need derived from *Matter of Artee Corp.*, 18 I&N Dec. 366 (Comm 1982), which, in effect, renders the PI Order meaningless. *See* ECF No. 132 at 8. There is no conceivable reason for why the Court would *order* the agency to continue to interpret temporary need as it has for other H-2B petitions since the 1980s, while at the same time ordering the court to go back to the *status quo* prior to the lawsuit. If this is the case on which the agency has relied

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

6

to determine temporary need since the end of the Disco era, there never should have been a change in adjudication in 2015.

Under this interpretation, Defendants have continued to delay and deny petitions solely for failure to meet peakload or one-time occurrence temporary need requirements just as they have done since FY 2015 and 2016, when the lawsuit was filed. The *status quo* remains the same. The Defendants are in direct violation of PI Order's stated purpose and mandate that Defendants *not* rely on failure to meet temporary need in denying applications. As the R and R states, "Defendants do not believe the PI Order enjoins them in any manner from denying [Plaintiffs'] petitions on the basis of the same rationale it employed in the prior denials." ECF 126 at 9.

Defendants additionally challenge the Order by asserting that any order mandating it to return to the *status quo*, as the plain wording of the PI Order requires, would be an *ultra vires* action of the Court. However, Defendants once again misconstrue the very nature of the present lawsuit and of the PI Order. Plaintiffs allege and have demonstrated a clear and convincing factual basis for the existence of a longstanding agency policy with regard to the adjudication of H-2B visa applications for the Plaintiff Class that, at some point prior to 2015, changed. Plaintiffs have alleged that this is in violation of APA's rulemaking requirements. Plaintiffs do not, and have not, asked the Court to administer the Immigration and Nationality Act, and the Court has never attempted to do so. The Court has, however, enjoined Defendants from implementing an unlawfully promulgated policy, as is consistent with both the APA and longstanding constitutional principles. *See* 5 U.S.C. § 702; *U.S. v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001) ("For 'several hundred years,' courts of equity have enjoyed 'sound discretion to consider the 'necessities of the public interest' when fashioning injunctive

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

7

relief." (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329-330 (1944)).  Defendants simply misunderstand or disregard the power a reviewing has Court over an unlawful agency action.

Further action is both warranted and authorized in the present case, and remand is not, as Defendants suggest, the only action a reviewing court is empowered to make, especially in the face of blatant disregard for the authority of the Court.  Indeed, in cases like the present, where alleged unlawfully promulgated regulations and policies are at issue, courts have historically issued mandamus orders vacating the new policy and reinstating previous policies.  *See, e.g., Small Refiner Lead Phase-Down Task Force v. U.S.E.P.A.*, 705 F.2d 506, 553 (D.C. 1983) ("When an agency replaces an existing regulation with a new regulation, and we vacate all or part of the new regulation, we must decide whether the agency's prior regulation continues in effect or whether our action leaves no regulation in effect"); *In re Polar Bear Endangered Species Listing & § 4(d) Rule Litig.*, 818 F.Supp. 2d 214, 239 (D.D.C. 2011) (reinstating a prior rule when after vacating an unlawfully promulgated rule); *Fund for Animals v. Norton*, 294 F.Supp. 2d 92, 115 (D.D.C. 2003) (same).  Such actions, in effect, force an agency to apply specific regulations that have been replaced by the agency, yet are not considered an *ultra vires* action under the APA.

Further, courts are statutorily authorized to compel agency action unreasonably delayed or unlawfully withheld, and such compulsion is not considered *ultra vires* in any way.  5 U.S.C. 706(1) (permitting a Court to compel agency action unlawfully withheld or unreasonably delayed).  Given the power of the court to vacate a new policy and mandate the agency continue to apply a previous one, or to compel specific agency action under 5 U.S.C. § 706,  the Court's PI Order compelling Defendants to maintain the status quo prior to 2015 during the present litigation is within its power, reasonable, and indeed tempered.

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

8

### ii. Defendants failed to provide sufficient acknowledgment of its prior policy and an adequate explanation of a departure from this policy in its denials.

While the PI Order specifically requires that Defendants acknowledge its previous policy and give an adequate explanation for why it is departing from that longstanding policy, Defendants failed to give such an explanation, and, as the R and R states, failed even to acknowledge a departure from its prior pattern of adjudications. *See* ECF No. 126 at 13.

In its denials, Defendants provided a factual recounting that the petitioner has "prior approvals for H-2B workers from September 2006 to February 2006." ECF No. 108-7 at 65. The denial recounted the company's history of approvals, and then stated that "Although [the company was] approved for several years based on [its] assertions that [it has] a peak load need, after careful review of [the company's] filing history, it now appears that there is a constant need, not temporary one." ECF No. 108-7 at 69. Defendants argue that this historical recounting of a class members' previous petitions amounts to an adequate acknowledgment of its previous policy, and an adequate explanation for why it is departing from that policy. However, as the R and R states, Defendants fail to appreciate the "implications, ramifications, and reach of the Court's PI Order." ECF No. 126 at 13.

An acknowledgement of previous policy, in order to comply with the PI Order and to be consistent with the nature of the present suit would require an acknowledgment of the agency's previous *policy*, not a detailed factual recounting of the petitioner's history of H-2B petitions. The Order requires an adequate explanation for *why* the agency is departing from that policy, which by definition, requires a discussion of the actual policy itself, and *why* it is changed, not a sentence saying that the same operative facts no longer meet the temporary need standard as they had for decades. Indeed, as the R and R states, Defendants failed to even acknowledge that a previous policy existed. *See* ECF No. 126 at 12.

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

9

As Defendants state, the APA does gives guidance on what *would* constitute an adequate explanation. However, the explanation that Defendants give fails to satisfy these standards. Plaintiffs do not argue that Defendants lack the power to alter its policies and practices. Plaintiffs recognize that an agency is generally free to change its position at any time, but the agency minimally must "display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* . . ." F.C.C. v. *Fox Television Stations, Inc*. 556 U.S. 502, 515 (2009) (emphasis in original). Additionally, sometimes an agency must be cognizant that, as has been explicitly and repeatedly stated in the present litigation, longstanding policies may have "engendered serious reliance interests that must be taken into account." *Id*. "In such cases . . . a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy. *Id*. at 515-16.

As discussed above, Defendants' interpretation and actions are unreasonable, and its explanations are wholly inadequate. As the Magistrate Judge stated in his R and R, "Defendants cannot explain their decision using the same reasoning used in the prior petitions because that reasoning has previously been rejected by the Court." ECF No. 126 at 11. Furthermore, explaining the departure from longstanding, agency wide practice with simply a factual acknowledgment of the previous practice entirely fails as a "reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox Television Stations*, 556 U.S. at 515. Indeed, such an "[u]nexplained inconsistency" is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *National Cable & Telecommunications Assn. v. Brand X Internet Services*, 545 U.S. 967, 981 (2005).

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

10

Defendants try to explain away the plainly unreasonable interpretation they have taken by stating that the APA allows the agency to change its policy at any time, "even in an adjudicatory setting." ECF No. 132 at 13 (citing *Airmark Corp. v. FAA*, 758 F.2d 685, 691-92 (D.C. Cir. 1985). However, in the context of the present case, such a drastic change in policy explained with a simple factual acknowledgment that USCIS previously adjudicated these petitions differently is *not* supported by the APA. Indeed, not only is such an unexplained departure from the prior policy where, for decades, factually identical petitions were approved in violation of the PI Order, such a departure amounts to a sub silentio policy change in violation of the APA.

And, even if the agency chooses to change policy, they do so within the constraints of the APA. As the Supreme Court recently said in *Kisor,*

> And even then, not every reasonable agency reading of a genuinely ambiguous rule should receive Auer deference. Rather, a court must also make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight. The inquiry along this dimension does not reduce to an exhaustive test, but the Court has laid out some especially important markers for identifying when Auer deference is and is not appropriate. To begin with, the regulatory interpretation must be the agency's authoritative or official position, rather than any more ad hoc statement not reflecting the agency's views. Next, the agency's interpretation must in some way implicate its substantive expertise, as the basis for deference ebbs when the subject matter of a dispute is distant from the agency's ordinary duties. Finally, an agency's reading of a rule must reflect its " fair and considered judgment."  A court should decline to defer, for example, to a merely "'convenient litigating position,'"or to a new interpretation that creates "unfair surprise" to regulated parties.

*Kisor v. Wilkie,* 588 U.S. \_\_\_\_ (2019).

In summary, the R and R clearly and concisely explains the Defendants' willful disregard for the Courts' PI Order, and none of the arguments raised in objection to these conclusions have merit. Defendants' interpretation is directly contrary to the purpose and plain wording of the PI

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

11

Order, and thus cannot be reasonable or in good faith. Defendants explicitly denied petitions for failure to meet the requirements for temporary need while failing to give an adequate explanation for departure from its prior policy, directly contrary to the Court's PI Order. Defendants demonstrably adjudicated Plaintiffs' H-2B petitions in a manner that was *not* consistent with longstanding practice and the PI Order. The Magistrate Judge considered all evidence and legal arguments in making his recommendation, and his report methodically details Defendants' willful failure to take all reasonable steps in complying with the Court's order, as well as the clear and convincing evidence that Plaintiffs have, through numerous filings, presented. For these reasons, Plaintiffs ask that this Court follow the R and R, find that the Defendants failed to comply with the PI Order, and find Defendants in contempt.

**B. The R and R was correct that appropriate sanctions are authorized and should be ordered by this court.**

Finally, rather than addressing Plaintiff's arguments related to contempt sanctions, Defendants once again assert that sovereign immunity bars such sanctions. The issue was fully briefed previously, and the R and R correctly concluded, after assessing all of the legal arguments and hearing from the parties themselves, that sanctions are both authorized and appropriate for this court to consider.

Defendants' assertion of sovereign immunity is without merit. Defendants fail to address the fact that contempt sanctions are historically incidental to and necessary for the injunctive power. By waiving sovereign immunity for injunctive relief, as is the case in the present suit under 5 U.S.C. § 702, Congress also necessarily waives sovereign immunity for contempt sanctions. Logically, without the power of contempt sanctions, the judiciary would be wholly unable to enforce its congressionally authorized injunction against a non-compliant government

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

12

actor. In essence, any injunction would be toothless, and injunctions against government actors as a whole would amount to unconstitutional advisory opinions.

Furthermore, sanctions against government actors without an express waiver of sovereign immunity are not unheard of, another point that Defendants fail to address. For example, sanctions for violations of the Federal Rules of Civil Procedure 11, 37(b), and 60 may be imposed against the government. *See United States v. Gavilan Joint Community College Dist.*, 849 F.2d 1246, 1251 (9th Cir. 1988); *United States v. National Medical Enters., Inc.*, 792 F.2d 906, 911 (9th Cir. 1986); *Schanen v. United States Dep't of Justice*, 798 F.2d 348, 350 (9th Cir. 1986). The Federal Rules of Civil Procedure are neither created by Congress, nor an express waiver of sovereign immunity, simply the application of the principle that incidental to the power of the judiciary is the power to control how judicial proceedings operate.[1]

Finally, Defendants' position that sovereign immunity protects it from sanctions would undercut basic constitutional principles of separation of powers. As the Supreme Court warned in 1911, "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). Accordingly, Plaintiffs ask that this Court follow the R and R and impose appropriate sanctions.

If anyone should be concerned about separation of powers, it should be this Court. The government Defendants are all Executive agencies that have demonstrably bypassed the

---

[1] The Federal Rules of Civil Procedure are promulgated by the U.S. Supreme Court and transmitted to Congress, who has the ability to veto the rules. They are neither statute nor regulation, and do not go through the Constitutional process of bicameral approval and presentment to the President. *See* 28 U.S.C. § 2073.

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

13

Legislature by creating new laws without Notice and Comment, as well as the authority of this Court in ignoring clear Court orders.

IV.     **CONCLUSION**

The Defendants' position is unreasonable and clearly contrary to the purpose of the PI Order to return the parties to the *status quo*. As the Magistrate Judge stated in his R and R, "Defendants have failed to appreciate the ramifications and reach of the PI Order." ECF. No. 126 at 9. For nearly two years, through requests for clarification, oral arguments, and multiple objections, the government has placed the Plaintiffs in the proverbial position of Achilles and the tortoise,[2] with an injunction that has been issued, but the effects of which have never been realized. Throughout this time, costs for the Plaintiffs continue to mount, both in legal fees and in business opportunities lost. Congress and this Court have already acknowledged the significant macroeconomic, health, environmental, and security concerns that come with Defendants' willful and unreasonable failure to comply. For the reasons stated above, and in the previous filings, Plaintiffs respectfully request this Court deny Defendants' request for oral arguments, follow the Magistrate Judge's Report and Recommendations, find Defendants in contempt, and order appropriate sanctions to compel compliance with the PI Order.

Respectfully submitted this 13th day of August, 2019

/s/  *Jeff Joseph*

Jeff Joseph

---

[2] The paradox of Achilles and the tortoise is attributed to a 5th century BC philosopher named Zeno, and describes a situation where Achilles, when attempting to catch a tortoise, is paradoxically never able to reach the tortoise because he must first reach an infinite number of intermittent points.

Plaintiffs' Response to Defendants' Objection to Magistrate Judge's Report and Recommendation

14

Joseph Law Firm, P.C.
12203 East Second Ave.
Aurora, CO  80011
(303) 297-9171
FAX:  (303) 733-4188
jeff@immigrationissues.com

Jennifer C. Davis
Davis & Davis, P.C.
P.O. Box 326686
Hagatna, Guam 96932
Phone:  (671) 649-1997
Fax:  (671) 649-1995
atty@davisdavis-law.com

Attorneys for Plaintiffs and Class

# CERTIFICATE OF SERVICE

I, Jeff Joseph, hereby certify that on August 13, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system and have sent notification of such filing to the following email address:

> Glenn.girdharry@usdoj.gov
> heather.sokolower@usdoj.gov

Respectfully submitted,


/s/*Jeff Joseph*
Jeff Joseph Colo. Reg. No. 28695
Joseph Law Firm
12203 E. Second Ave.
Aurora, CO 80011
Phone: (303) 297-9171
Fax: (303) 733-4188
Jeff@immigrationissues.com
Attorney for Plaintiffs