# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GUAM CONTRACTORS ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM P. BARR, Attorney General of the United States, *et al.*, <br><br> Defendants. | CIVIL CASE NO. 16-00075 <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO HOLD DEFENDANTS IN CONTEMPT** |

Before the court is Plaintiffs' motion to hold Defendants in contempt, ECF No. 108, the Magistrate Judge's report and recommendation on said motion, ECF No. 126, and Defendants' objections thereto, ECF No. 132. The Magistrates Act requires the court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In conducting such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Defendants object to the report and recommendation's "findings and conclusions in their entirety." ECF No. 132 ("Objections") at 5. Upon de novo review, the court finds Plaintiffs have failed to demonstrate Defendants' violation of a specific and definite court order by clear and convincing evidence.

**I. BACKGROUND**

The Magistrate Judge ably sets forth the relevant statutory, regulatory, and factual background of this action in the report and recommendation regarding Plaintiffs' initial motion for a preliminary injunction. *See* ECF No. 61. The court previously adopted by reference the

Magistrate Judge's articulation of this background. *See* ECF No. 81 at 2. The court adopts that background again here and therefore only recounts below the developments that have taken place since that report and recommendation.

On January 24, 2018, the court entered an order granting in part Plaintiffs' motion for a preliminary injunction. *See* ECF No. 81 ("PI Order") at 32. The order "enjoined [United States Citizenship and Immigration Services (USCIS)] from relying on application of the reasoning presented in its denials of the FY 2015 and FY 2016 petitions [i.e., failure to satisfy peakload or one-time occurrence conditions] … to deny any petitions previously submitted by the Plaintiffs or any petitions they submit after the date of this Order, in the absence of adequate acknowledgement of a prior course of adjudication and adequate explanation for departure from that course." *Id.* at 32-33. The court further ordered Defendants to "adjudicate any petitions submitted by the Plaintiffs … in a manner consistent with both any longstanding practice and this Order." *Id.* at 33.

On March 31, 2018, the court granted Plaintiffs' motion for class certification, certifying a plaintiff class of "Petitioners who have filed or will file an I-129 application for H-2B workers for Guam under one of the following two categories:[¶] 1. Peakload need (the 'Peakload Subclass'); or [¶] 2. One-Time Occurrence (the 'One-Time Occurrence Subclass') [a]nd who have received or will receive a denial of such I-129 application based on a finding that the Petitioner is unable to demonstrate 'temporary need.'" ECF No. 92 at 12-13. On May 11, 2018, the court clarified that "the preliminary injunction entered in this case shall apply to all members of the certified class." ECF No. 97 at 3.

On November 1, 2018, Plaintiffs filed the motion presently before the court, to hold Defendants in contempt for failing to comply with the preliminary injunction. The basis for the motion is that, on October 3, 2018, USCIS denied nine I-129 petitions by Plaintiff Ace Builders on the basis of failure to establish temporary need based on an unpredictable peakload situation. ECF No. 108 ("Contempt Motion") at 6. Additionally, of the 708 positions for which Plaintiffs filed I-129 applications, none had been approved as of September 26, 2018, and 577 had resulted

in burdensome requests for evidence ("RFEs") being issued, focusing in large part on temporary need. Contempt Motion at 5.

## II. LEGAL STANDARD

"Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). A contempt sanction is "considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] … compensate[s] the complainant for losses sustained.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *Inst. of Cetacean Research*, 774 F.3d at 945 (quoting *Dual-Deck*, 774 F.3d at 695).

## III. DISCUSSION

The precise nature of Defendants' alleged non-compliance has evolved over the course of the contempt proceedings. Plaintiffs' initial contempt motion appeared to assume that the preliminary injunction prohibited Defendants from denying Plaintiffs' petitions based on a failure to demonstrate temporary need altogether,[1] and thus relied on the denials alone as the basis for a contempt finding.[2] As Defendants' opposition to the motion noted, however, the preliminary injunction only prohibited Defendants from relying on Plaintiffs' failure to demonstrate temporary need "in the absence of adequate acknowledgement of a prior course of adjudication and adequate explanation for departure from that course." ECF No. 111 ("Opp'n") at 1-2

---

[1] *See, e.g.*, Contempt Motion at 2 ("Despite a preliminary injunction ordered by this Court expressly prohibiting USCIS from denying petitions based on a failure to satisfy the temporary need requirement based on peakload or one-time occurrence grounds, Defendants have failed to take all reasonable steps to comply with the injunction.").

[2] *See, e.g.*, Contempt Motion at 10 ("Defendants have demonstrated a willful and explicit disregard for this Court's order by expressly denying Ace Builders, LLC's petitions solely on a failure to establish a temporary need, as well as a practice of skirting the Court's order by delaying and withholding adjudication….").

3

(quoting PI Order at 32) (emphasis omitted). The Magistrate Judge's report and recommendation proposes finding that USCIS failed to comply with the preliminary injunction in three ways: (1) it "has not acknowledged a departure from its prior adjudications"; (2) it "has not provided an adequate or rational explanation for a departure from its prior adjudication[s]"; and (3) it has failed to adjudicate the petitions "in a manner consistent with [its] longstanding practice" because it "denied [Ace Builders'] current petitions in a manner inconsistent with its prior adjudications." ECF No. 126 at 11-12.

Plaintiffs' current position on the exact scope of the preliminary injunction is not wholly clear. Plaintiffs continue to assert that "Defendants were specifically enjoined from using temporary need as a basis for denial of class members' subsequent H-2B petitions." *See* ECF No. 133 ("Response to Objections") at 6. However, they elsewhere acknowledge that the preliminary injunction permits denials based on temporary need when certain conditions are met. For example, they state that "Defendants, by the *plain wording* of the PI Order, have been enjoined from denying H-2B petitions from Plaintiff Class solely on the basis of temporary need absent an acknowledgement of the previous *policy*, and an adequate explanation of both <u>how</u> the *agency wide* practice changed and <u>why</u> the *agency wide* practice changed." *Id.* at 5 (emphasis in original). While this latter articulation of the preliminary injunction's requirements is more modest, the court concludes that it is still overly broad to the extent it purports to prohibit the conduct at issue here.

As Plaintiffs correctly note, "the court issued [its] injunction to restore the status quo," *id.* at 4, and the scope of the injunction therefore should be understood with reference to that status quo. However, as the court noted in the preliminary injunction order, "the parties' hotly-debated dispute as to what precisely constitutes the 'status quo' might appear to present some difficulties for fashioning the remedy." PI Order at 28. Plaintiffs' broad interpretation of the scope of the preliminary injunction would likely be justified if the court had purported to resolve this "hotly-debated dispute" in Plaintiffs' favor, but in fact, the court fashioned a modest remedy limited to those aspects of the status quo that were "reasonably clearly established." *Id.* at 29. For the

reasons below, the court concludes that Defendants have not transgressed the dictates of the preliminary injunction's modest scope.

**A.      USCIS's denials adequately acknowledged a prior course of adjudication.**

Plaintiffs contend that, in denying their petitions based on a failure to demonstrate temporary need, USCIS was required to provide an "acknowledgement of the previous *policy*." Response to Objections at 5. The language of the preliminary injunction, however, makes no mention of any "policy," but merely a "prior course of adjudication." PI Order at 32-33. Interpreting this language to require acknowledgement of a previous policy necessarily assumes the existence of a "previous policy" to be acknowledged. But the court's order did not purport to determine whether USCIS's prior "pattern of positive adjudication" was the result of "some policy, guidance, or interpretation, which has now changed." *Id.* at 28. The court simply acknowledged this as one possibility among others that might explain the change in adjudicatory pattern. *See id.* at 28-29 (recognizing other possible explanations). Interpreting this language to assume facts that were never found by the court is therefore implausible. Rather than acknowledging a "previous policy," USCIS was simply required under the preliminary injunction to acknowledge a "prior course of adjudication."

The court concludes that USCIS has complied with this requirement. In denying Ace Builders' petitions, USCIS acknowledged that "according to UCSIC [sic] records, you have filed close to 100 H-2B petitions since 2006, many of which have been approved." ECF No. 108-7 at 6. It also noted that Ace Builders' petitions "were approved from 2006 to 2016 based on your assertions that you have a peakload need…." *Id.* These denials therefore differ from those previously found to be unacceptable, which "conspicuously omit[ted] … any recognition that a pattern of result may have in fact changed." PI Order at 25. USCIS's acknowledgment suffices to demonstrate that USCIS has undertaken "an avowed alteration" of its settled course of adjudication, rather than "an irrational departure from" it. *See I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). The court therefore finds that USCIS's denials of Ace Builders' petitions adequately acknowledged a prior course of adjudication.

**B.  Any failure to provide an "adequate" explanation for USCIS's departure from its prior course of adjudication did not constitute "disobedience to a specific and definite court order."**

The court's preliminary injunction prohibited Defendants from denying Plaintiffs' petitions based on a failure to demonstrate temporary need "in the absence of … adequate explanation for departure from" its prior course of adjudication. PI Order at 32-33. USCIS's denial of Ace Builders' petition states:

> You were approved from 2006 to 2016 based on your assertions that you have a peakload need, and accordingly the temporary additions to your staff would not become a part of your regular operation. Your filing history and your own statements regarding your need and your assertion that the beneficiaries of the instant petition would not become part of your regular operation is insufficient to meet your burden of proof.

ECF No.108-7 at 6.

The court interprets this statement—that Plaintiff's prior approvals were "based on … [evidence] insufficient to meet [its] burden of proof"—as essentially a concession that the agency had been improperly "rubber-stamping" Ace Builders' petitions in prior years without properly investigating or determining whether the temporary need requirement was met. This interpretation is confirmed by Defendants' filings in this case, which state that "USCIS concededly should have begun denying these petitions earlier than it did…." ECF No. 132 ("Objections") at 4.

The court can understand why Plaintiffs—faced with a significant, unanticipated, and costly shift in the conditions under which they operate their businesses—might find this "explanation" unsatisfying. But as Defendants correctly note, it "raises the issue of what constitutes a sufficient acknowledgment and adequate explanation" under the preliminary injunction. *Id.* at 10. Defendants contend that "[Administrative Procedures Act (APA)] principles establish the appropriate standards." *Id.* It is far from clear, however, that "APA principles" actually support the adequacy of USCIS's "explanation" under these circumstances. None of the

6

cases cited by Defendants purport to hold that an agency can establish the rationality of its present actions by disclaiming the rationality of its past ones. Such a strategy raises serious jurisprudential concerns, as it involves an attempt to simultaneously invoke and rebut the presumption of regularity attendant to agency decision-making.

However, the court need not determine here whether the agency's explanation is "adequate" for purposes of review under the APA. It suffices instead to invoke standard principles surrounding injunctions and the court's contempt power. A finding of civil contempt requires "disobedience to a *specific and definite* court order." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)) (emphasis added). The requirement that an injunction's terms be specific and definite ensures that the party subject to the injunction is "provided … with fair and well-defined notice of the prohibited conduct." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1132 (2006). In issuing the preliminary injunction in this case, the court stated that it "takes no position as to … what, if anything, might constitute an adequate acknowledgement of and explanation for departure" from a prior course of adjudication. PI Order at 29. Any finding of contempt that is based on the court's *post-hoc* conclusion that the explanation actually offered by the agency was "inadequate" thus raises serious concerns as to whether USCIS had "fair and well-defined notice" that its conduct was prohibited by the preliminary injunction.

The Magistrate Judge found—and Plaintiffs agree—that it would be fair to find USCIS's explanation inadequate in this case because "that reasoning has previously been rejected by the Court." ECF No. 126 ("Report and Recommendation re Contempt") at 11; Response to Objections at 10. The court does not believe, however, that it was earlier confronted with an explanation from USCIS that it had previously been improperly "rubber-stamping" Plaintiffs' H-2B applications, nor did the court have occasion to consider the adequacy of such an explanation. Indeed, as noted above, based on the present state of the parties' briefing, the court is unprepared to say whether such an explanation is "adequate" to survive review under the APA. Accordingly, the court finds that USCIS's denial of Ace Builders' petition was accompanied by an explanation

that had not previously been rejected by the court. To require any more of the agency's explanation would risk holding it in contempt in the absence of a "specific and definite" court order.

**C.      Plaintiffs have not demonstrated by clear and convincing evidence a failure on the part of USCIS to adjudicate their petitions "consistent with [its] longstanding practice."**

The final basis identified by the Magistrate Judge and the plaintiffs for holding Defendants in contempt is their failure to adjudicate Plaintiffs' petitions "in a manner consistent with … longstanding practice." *See* PI Order at 33. The parties' arguments on this front raise issues relating to (1) the distinction between policies and practices; and (2) the court's authority to order adherence to a practice that may have been contrary to law. Defendants contend that USCIS "*has* adjudicated class members' H-2B petitions in a manner consistent with both the PI Order and the agency's longstanding policy on 'temporariness' in the H-2B visa program." Objections at 14-15 (citing *Matter of Artee Corp.*, 18 I. & N. Dec. 366, 367 (Comm. 1982)) (emphasis in original). Defendants further contend the report and recommendation "found that the 'longstanding practice' referenced in the PI Order meant the agency's prior approvals of class members' previously filed petitions," a finding to which they object. *See* Objections at 15.

The Magistrate Judge's finding that the "longstanding practice" discussed in the preliminary injunction refers to the agency's prior approvals is not without support in the record. For example, in discussing the agency's longstanding practice, the court noted that "it was historically true that these petitions were *not denied* based on failure to satisfy a peakload or one-time occurrence condition." PI Order at 29. Indeed, in the absence of contravening considerations, the court would likely adopt this interpretation of the preliminary injunction as well. However, several considerations lead the court to conclude that the phrase "longstanding practice" was improvidently chosen, and to interpret the preliminary injunction as requiring adherence to longstanding *policy* rather than longstanding *practice*.

First, the primary cases on which the court relied in characterizing the injunction as prohibitive rather than mandatory dealt with injunctions prohibiting parties from enforcing newly

8

adopted policies, rather than from abandoning old practices. *See* PI Order at 22-24; *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725 (9th Cir. 1999); *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014). Indeed, *Arizona Dream Act* specifically distinguished between mandating adherence to prior practices and prohibiting adoption of new policies in defining the "status quo" for purposes of a preliminary injunction. *See* 757 F.3d at 1061 ("The district court erred in defining the status quo *ante litem* as a situation in which 'Defendants did not issue driver's licenses to Plaintiffs.' Plaintiffs do not challenge any particular refusal to grant driver's licenses to them as individuals. Instead, Plaintiffs challenge the … [newly adopted] eligibility standards, in general.").

More importantly, Defendants have now raised the suggestion that their prior "practice"—as opposed to their prior "policy"—may have been unlawful, as it may have involved the issuance of H-2B visas absent a true determination that all of the statutory requirements were met. It is beyond dispute that the court has no authority to order a party to violate the law. *Cf. Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992) ("A consent decree must of course be modified if … one or more obligations placed upon the parties has become impermissible under federal law."). USCIS's denial of Ace Builders' petition states that Ace Builders' prior applications were approved based on insufficient evidence, ECF No. 108-7 at 6, not because they were found to meet some previous set of now-abandoned criteria. As noted above, this position essentially concedes that USCIS was previously in the practice of "rubber-stamping" Plaintiffs' petitions, and Plaintiffs have not—at least for purposes of this motion—attempted to demonstrate by clear and convincing evidence that the agency's position false. The court will not interpret the preliminary injunction as requiring Defendants to continue "rubber-stamping" applications simply because such was its prior practice. Any such interpretation would likely render the preliminary injunction itself improper, and the court will not interpret its own order so as to invalidate it.

Instead, the court interprets the preliminary injunction as requiring Defendants to adhere to any lawful policy the agency had previously adopted, either through rulemaking or longstanding practice. Because Plaintiffs have not shown by clear and convincing evidence that

Defendants failed to adjudicate their petitions consistent with any longstanding lawful policy, this basis for holding Defendants in contempt fails.

## IV. CONCLUSION

For the reasons above, Plaintiffs' motion to hold Defendants in contempt for failing to comply with the court's preliminary injunction is **DENIED**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Dec 11, 2019**